HAROLD BROVERMAN *et al.*, d/b/a Taylorville Landfill, Plaintiffs-Appellants, *v.* THE CITY OF TAYLORVILLE, Defendant-Appellee.

Fifth District   No. 78-28

Opinion filed September 28, 1978.

D. A. McGrady, of McGrady & McGrady, of Gillespie, for appellants.

Miley, Meyer & Austin, of Taylorville (Daniel W. Austin and William J. Meyer, Jr., of counsel), for appellee.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Plaintiffs, Harold Broverman and Theodora Baker, owners of Taylorville Landfill, appeal from a judgment of the circuit court of Christian County finding their small claim action in contract brought to recover $106.66 allegedly owed by defendant, City of Taylorville, was not enforceable because plaintiffs did not have an operating permit as required by the statutes of the Environmental Protection Act, and the Solid Waste Rules and Regulations created thereunder. Ill. Rev. Stat. 1975, ch. 111½, pars. 1021(e), 1022; Solid Waste Rules and Regulations, ch. 7, pt. 2, rule 202(b)(1).

The relevant facts of this case are as follows: On August 18, 1975, the parties to this suit entered into a contract which provided in pertinent part:

"THIS AGREEMENT, made this 18th day of August, 1975, by and between the City of Taylorville, a municipal corporation of the State of Illinois, hereafter called City, and Harold Broverman and Theodora Baker, d/b/a Taylorville Landfill, hereafter called Operator, WITNESSETH:

WHEREAS, the Operator is the contract purchaser and is currently in possession of certain real estate described as follows:
\* \* \*

AND WHEREAS, City has used said property as a dumping ground for the City of Taylorville and desires to continue to use said property as a dumping ground;

NOW, THEREFORE, it is agreed:

1. Operator hereby grants City the right and privilege to dispose onto Operator's property described herein, all trash, garbage and all other forms of refuse that are in compliance with the provisions and restrictions of the permit to be issued to Operator herein by the State of Illinois Environmental Protection Agency (EPA).
\* \* \*

2. City agrees to pay operator the sum of $1600 per month for the privilege of disposing of its refuse as aforesaid. First payment shall commence on the 15th day of September, 1975, which payment shall be for the previous month's service.
\* \* \*

4. Operator agrees that he will operate the within described property as a refuse disposal site in accordance with all applicable laws of the United States, the State of Illinois, and any other governmental body having jurisdiction over said site and in

particular will comply with the following sections of the Illinois Revised Statutes, 1973: Chapter 111-½, Sections 1008-1010, and Chapter 100-½, Section 27.

5. City shall be under no obligation to supervise or maintain the dumping ground and its only duty under this contract shall be to pay Operator the sum set forth in Paragraph 2 herein.

6. This agreement shall commence on the 15th day of August, 1975, and shall expire on the 14th day of August, 1978.

* * * "

In accordance with this agreement, plaintiffs disposed of the defendant's trash and defendant made its monthly payment until defendant received a letter from a division of the Illinois Environmental Protection Agency (hereinafter referred to as the "Agency") on August 9, 1977. The letter notified defendant that following an Agency investigation, it was determined that the plaintiffs did not have an Agency operating permit as required by section 21(e) of the Environmental Protection Act and rule 202(b)(1) of chapter 7, Solid Waste Rules and Regulations of the Illinois Pollution Control Board. (Ill. Rev. Stat. 1975, ch. 111½, par. 1021(e); Solid Waste Rules and Regulations, ch. 7, pt. 2, rule 202(b)(1).) Defendant was warned that continued disposal of trash at plaintiffs' location would be in violation of section 21(f), which requires persons disposing of refuse to comply with the Environmental Protection Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1021(f)). The letter also notified the defendant that in accordance with section 42(a) of the Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1042(a)) it could be found liable for a fine up to $10,000 and an additional penalty not to exceed $1000 for each day during which the violation continued.

Although the record is not clear as to the exact date, or contents of the communication, sometime shortly after defendant's receipt of the Agency's letter defendant notified plaintiff by mail of the warning received from the Agency, and on August 15, 1977, sent plaintiffs a check for $1493.34. This sum was payment figured on a *pro rata* basis for daily service provided until defendant notified plaintiffs of the Agency warning two days before monthly payment was due. Since the monthly payment as listed in the contract was to be $1600 from the 15th of one month to the 15th of the next month, plaintiffs sued for the difference, $106.66, alleging defendant breached the contract.

At the two hearings held on this matter, it was uncontested that at the time of creation of the contract in question, plaintiffs possessed a developmental permit. Although they had been attempting to obtain an operating permit for the past three or four years, they had not been able to do so.

John Dieffenbach, a specialist for the Environmental Protection

Agency's Division of Land Pollution Control, testified for defendant that a developmental permit is issued to an applicant indicating the Agency approves the applicant's plan for disposal of waste. However, an applicant may not accept any type of refuse until an operating permit has been issued by the Agency.

Also a part of this record is a certified copy of a November 10, 1977, opinion and order of the Pollution Control Board where, in an action filed by the Agency, the Board found, among other things, that plaintiffs operated their refuse disposal site without an operating permit from July 27, 1974, to April 21, 1976, in violation of rule 202(b)(1) of chapter 7 of the Solid Waste Rules and Regulations and section 21(a) of the Environmental Protection Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1021(a); Solid Waste Rules and Regulations, ch. 7, par. 2, rule 202(b)(1)).

Plaintiffs now contend: (1) The contract was legal and enforceable, (2) defendant failed to prove plaintiffs' "illegality and lack of authority to accept the City's refuse," and (3) the lower court "denied the affirmative defense, * * * and then erroneously denied plaintiffs a judgment on the contract." We affirm.

We first consider the statutory and regulatory requirements of the Environmental Protection Act. Section 20 sets out the legislative declaration of title V, "LAND POLLUTION AND REFUSE DISPOSAL," as follows:

> "The General Assembly finds that economic and population growth and new methods of manufacture, packaging, and marketing, without the parallel growth of facilities enabling and ensuring the recycling, re-use and conservation of natural resources and solid waste, have resulted in a rising tide of scrap and waste materials of all kinds; that excessive quantities of refuse and inefficient and improper methods of refuse disposal result in scenic blight, cause serious hazards to public health and safety, create public nuisances, divert land from more productive uses, depress the value of nearby property, offend the senses, and otherwise interfere with community life and development; that the failure to salvage and reuse scrap and refuse results in the waste and depletion of our natural resources and contributes to the degradation of our environment.

> It is the purpose of this Title to prevent the pollution or misuse of land, to promote the conservation of natural resources and minimize environmental damage by reducing the difficulty of disposal of wastes and encouraging and effecting the re-cycling and re-use of waste materials, and upgrading waste collection and disposal practices." Ill. Rev. Stat. 1975, ch. 111½, par. 1020.

In accordance with this declaration, sections 21(e) and 21(f) state in pertinent part:

"No person shall:

\* \* \*

(e) Conduct any refuse-collection or refuse-disposal operations, \* \* \*, without a permit granted by the Agency upon such conditions, \* \* \*, as may be necessary to assure compliance with this Act and with regulations adopted thereunder, after the Board has adopted standards for the location, design, operation, and maintenance of such facilities. \* \* \*

(f) Dispose of any refuse, or transport any refuse into this State for disposal, except at a site or facility which meets the requirements of this Act and of regulations thereunder." Ill. Rev. Stat. 1975, ch. 111½, par. 1021(e), (f).

Section 22 provides for the adoption of regulations to promote purposes of this Title. (Ill. Rev. Stat. 1975, ch. 111½, par. 1022.) And in accordance with this section, rule 201 (necessity for obtaining a developmental permit) and rule 202(b)(1) (necessity for obtaining an operating permit) were adopted. They provide:

"Subject to such exemption as expressly provided in Section 21(e) of the Environmental Protection Act as to the requirement of obtaining a permit, no person shall cause or allow development of any new solid waste management site or cause or allow the modification of an existing solid waste management site without a Development Permit issued by the Agency." (Solid Waste Rules and Regulations, ch. 7, pt. 2, rule 201.)

"(b) Existing Solid Waste Management Sites.

(1) Subject to such exemption as expressly provided in Section 21(e) of the Environmental Protection Act as to the requirement of obtaining a permit, no person shall cause or allow the use or operation of any existing solid waste management site without an Operating Permit issued by the Agency not later than one year after the effective date of these regulations." (Solid Waste Rules and Regulations, ch. 7, pt. 2, rule 202(b)(1).)

These rules became effective as of July 27, 1973.

Furthermore, title XII of this Act provides for civil penalty for violation of any provisions of the Act, regulations, permit or terms or conditions thereof with possible fines of up to $10,000 and $1000 for each continuous day of violation.

■■ ■ In Illinois when a statute declares that it shall be unlawful to perform an act and imposes a penalty for its violation, contracts for the performance of an act are void and incapable of enforcement. (*Frankel v.*

*Allied Mills, Inc.*, 369 Ill. 578, 583, 17 N.E.2d 570.) No recovery can be had by either party to a contract the performance of which involves the violation of an existing law. (*American Tank & Installation Co. v. Rudolph Wurlitzer Co.*, 254 Ill. App. 514, 519.) Exceptions to the rule may be applicable where the parties are not *in pari delicto*, or where the law which makes the agreement unlawful is intended for the protection of the party seeking relief. 12 Ill. L. & Prac. *Contracts* §192 (1955).

The legislative declaration of section 20 clearly states that this Act was intended, *inter alia*, to prevent pollution or land misuse and update waste collection and disposal practices. Clearly, the Act was intended to protect the public welfare and regulate the conduct of citizens generally. Further evidence of this intent can be traced to the penalty provisions provided in section 42(a). The requirement of possessing an operating permit before a refuse disposal area may operate is a means by which the legislature intended to accomplish this objective.

■■■ As rule 202(b)(1) indicates, after July 27, 1974, any use or operation of existing solid waste management site without an operating permit issued by the Agency is a violation of the law. In the instant case, the parties contracted for the disposal of the defendant's garbage and waste effective as of August 15, 1975, knowing full well that plaintiffs did not have the required operating permit. This is apparent from the language of paragraph 1 of the contract which indicates "the permit to be issued" and paragraph 5 where the defendant sought to relieve itself of all obligations for the maintenance and supervision of the dumping grounds. Indeed, the contract indicates defendant had been dumping refuse at plaintiffs' location in the past and this contract was simply a continuation of that activity. This contract was in direct violation of rule 202(b)(1). It was therefore void. The fact that performance was carried out for two years is immaterial. Estoppel cannot work to make this illegal contract valid. See *Lyons v. Schanbacher*, 316 Ill. 569, 574-75, 147 N.E. 440; *Pitsch v. Continental & Commercial National Bank*, 305 Ill. 265, 273, 137 N.E. 198.

■■ Under section 21(f), both parties are responsible for compliance with this Act. The contract was an attempt by both parties to circumvent the Act. Therefore, no recovery can be had by either party. Accordingly, judgment of the trial court is affirmed.

Affirmed.

JONES and KUNCE, JJ., concur.