_ -r , FLAUM, Circuit Judge. °
 

 This appeal raises the question of whether the district court erred in granting summary judgment against all defendants on the issue of liability for the price of goods sold and delivered and against defendants Joseph Nuzzo and Richard MacQueen
 
 [1]
 
 on their personal guarantees of defendant Big 0 Warehouse’s debt. We find that there is a genuine issue of material fact, and thus, we reverse and remand for further proceedings.
 

 *
 

 This case involves the liability of defendants-appellants for tires sold and delivered between January and November of 1980. , , . ,, , ,, le understand the relationship among the .. , ... , , , parties, however, it is necessary to go back some years.
 

 Coordinated Services Inc. (Coordinated) was incorporated in 1961 or 1962. In 1976, it went into the retail tire business. At that time, its shareholders and directors included defendants-appellants Joseph Nuz-zo (Joseph), Alex Nuzzo (Alex), and Paul Arra (Arra). In 1977 or 1978, defendant Richard MacQueen (MacQueen) became a shareholder and director of Coordinated.
 

 On April 1, 1977, pursuant to an agreement between plaintiff-appellee Big O Tires Inc. (Big O), defendants Big O Warehouse (Warehouse) and MacQueen, and a corporation known as Unimark Inc., Warehouse in effect replaced Unimark as a wholesaler of Big 0 products. The agreement identifies Warehouse as a partnership, and it is executed by MacQueen and by Joseph on behalf of Warehouse.
 

 In an agreement dated September 30, 1977, and signed March, 1978 (“Dealer’s Agreement”), Big O promised to sell and deliver tires as set forth in that agreement, The agreement is between Big 0 and “Joseph Nuzzo, Alex Nuzzo and Paul J. Arra, dba Big 0 Tires-Mt. Prospect, Division of Coordinated Services” as purchaser. The , ., .... , T11. . purchaser was identified as an Illinois corporation. The agreement was signed “Jo-gepb nUZZo, President.”
 

 A corporate resolution of Coordinated dated November 30, 1978, recites that on that date Warehouse’s assets were transferred to Coordinated. The resolution was signed by MacQueen, Joseph, Alex, and Arra, as shareholders and directors of Coordinated. It identifies Warehouse as a partnership and Joseph, Alex, and Arra as partners.
 

 In his deposition, Joseph stated that Warehouse became a division of Coordinated ¡n November 1978. MacQueen stated in ,. , ... ., . w , . his deposition that Warehouse last did bust- . ^ ,, _ ,. ness m December 1979; after that, Coordi- . . , . . „ . „ TTT nated lust carried forward as Big 0 Ware- , house. (MacQueen Dep. at 4.) He further stated that Big 0 was advised in February 1979 that the Warehouse partnership bad been taken oyer
 

 February 20, 1979, MacQueen and JosePh signed personal guarantees of Warehouse’s debt to Big O.
 

 By letter dated March 10, 1981, Mr. Spencer of Big O demanded payment of MacQueen, as guarantor, of an amount of $185,049.30 as past due from Warehouse on prior statements for tires sold and delivered between January and November of 1980. MacQueen stated at his deposition that neither he nor to his knowledge any other person had responded to those prior statements, and that he believed that he had not responded to Spencer’s letter. He further stated that he believed the sum to be accurate. Both MacQueen and Joseph stated that Big O refused to continue shipping products to Warehouse because of nonpayment of the debt.
 

 
 *162
 
 On April 15, 1981, Big O filed its complaint in this action. Defendants filed their answer, generally denying the allegation that Big 0 had sold and delivered goods to Warehouse on open accounts. Coordinated was granted leave to interplead as a coun-terclaimant. Its counterclaim alleged that it owned and operated Warehouse and retail tire stores that were operated as franchisees of Big 0, that the franchises were to be supplied with Big 0 products through Warehouse, and that Big 0 cut off the supply of products to Warehouse, wrongfully damaging Coordinated. Coordinated described its written franchise agreement as the Dealer’s Agreement dated September 30, 1977.
 

 Big 0 filed its motion for summary judgment on both its claim and Coordinated’s counterclaim. Big 0 did not attach affida- ' vits to its motion, but instead relied on its pleadings, the depositions of MacQueen and Joseph, and the unchallenged documents. In responding to the motion, defendants did not offer affidavits or any other contradictory evidence, but instead relied on their pleadings. Defendants argued that Coordinated, and not Warehouse, was the party liable for the debt and that there was a genuine issue of fact as to the amount due because MacQueen’s admission in his deposition as to the amount due was insufficient proof.
 

 The trial court granted the motion for summary judgment as to liability. The court found that it was unable to determine the amount of damages and set the matter for a prove-up. At the prove-up, the only witness was Mr. Frederick of Big O. At that time, defendants first raised the issue of whether the tires had been delivered. Frederick testified to Big O’s delivery procedures and stated that, as to Warehouse, Big 0 had never received any objection to any of its invoices and that any failure to deliver to Warehouse would have been brought to his personal attention. Frederick identified invoices and ledger accounts showing the amount due from Warehouse.
 

 On November 23, 1982, the court entered its order on damages, awarding Big 0 the damages proved. The court awarded judgment against defendants in the amount of $198,756.29, and against MacQueen and Joseph on their personal guarantees in the amount of $207,912.68.
 
 [2]
 

 On November 26, defendants moved to alter or amend the judgment on the grounds that Big 0 had failed to establish that any tires had been delivered to defendants. On December 19, 1982, defendants filed a second motion on the same grounds.
 

 On June 22, 1983, Alex requested leave to substitute counsel because of an alleged conflict of interest between himself and Joseph and MacQueen. He also filed an amended motion to alter or amend the judgment. In his motion, he argued that there was no evidence that he was a general partner of Warehouse.
 

 The trial court denied the motions to alter or amend filed on behalf of all defendants. The court found MacQueen’s statement that a debt was owed sufficient to establish delivery in the absence of any evidence from the defendants to show lack of delivery. The court further found that the evidence was sufficient to establish an account stated as an alternative theory of liability.
 

 On August 18, 1983, the court granted Alex’s separate motion to alter or amend, finding that there was insufficient evidence that Alex was a general partner in Warehouse. On September 16, the court held a hearing on Big O’s motion to confirm the finality of the summary judgment. At that time, counsel for Arra and Joseph tendered to the court a copy of the Coordinated corporate resolution accepting the assets of Warehouse; the resolution was signed by Alex and described him as a partner. On September 27, the trial court on its own motion vacated its order of August 18, thus re-entering summary judgment against Alex. Alex, Joseph, and Arra have appealed.
 

 
 *163
 
 On Appeal, Joseph and Arra argue that summary judgment was improper because there are genuine issues of material fact. They argue that the Dealer’s Agreement dated September 20,1977, and their personal guarantees demonstrate that Big 0 was dealing with a corporation called Coordinated and not with a partnership called Warehouse. They further contend that Big O’s evidence is not sufficient to establish the amount of the indebtedness. Third, Joseph and Arra argue that there is insufficient evidence of delivery of goods. Finally, they maintain that the court erred in finding an account stated. Joseph argues that summary judgment on his personal guaranty should be reversed because of the above disputes as to facts.
 

 Alex argues that there is insufficient proof that Big 0 ever entered into an agreement with a partnership or that he was a member of that partnership. However, Alex states that he is willing to concede that he was a partner in Warehouse. He maintains, however, that the partnership was dissolved in 1978 and that Big 0 knew of the dissolution; thus Coordinated, and not Warehouse, is liable for tires sold and delivered in 1980.
 

 In response, Big 0 argues that it did business with Warehouse as a partnership, and thus summary judgment was proper. It contends that the evidence is sufficient to prove both delivery and an account stated.
 

 II
 

 In this case, appellants have asserted the existence of three questions of fact: delivery of the tires; the amount of the sum due; and the identity and nature of the entity that owes the debt. Summary judgment is appropriate only where the record shows that “there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Fed.R.Civ.P. 56. The party moving for summary judgment has the burden of establishing the lack of a genuine issue of material fact.
 
 Korf v. Ball State University,
 
 726 F.2d 1222, 1226 (7th Cir.1984). The court must view the evidence, and the reasonable inferences to be drawn from the evidence, in the light most favorable to the party opposing summary judgment. Where the moving party fails to meet its strict burden of proof, summary judgment cannot be entered even if the opposing party fails to respond to the motion.
 
 Yorger v. Pittsburgh Coming Corp.,
 
 733 F.2d 1215 (7th Cir.1984).
 

 Where the moving party has met its initial burden and the opposing party asserts the existence of a question of fact, this court has identified two considerations to be used in determining whether summary judgment is proper. The court must determine whether the non-moving party has established that there is a genuine issues as to that fact:
 

 To create a question of fact, an adverse party responding to a properly made and supported summary judgment motion must set forth specific facts showing that there is a genuine issue for trial ---- A party may not rest on mere allegations or denials of his pleadings; similarly, a bare contention that an issue of fact exists is insufficient to raise a factual issue.
 

 Posey v. Skyline Corp.,
 
 702 F.2d 102, 105 (7th Cir.1983).
 
 See
 
 Fed.R.Civ.P. 56, Notes of Advisory Committee on Rules (“the very mission of the summary judgment procedure is to pierce the pleadings”). As this court has warned, “it is always prudent to respond to a motion for summary judgment, even if the opposing party believes that the movant has failed to sustain his initial burden.”
 
 Egger v. Phillips,
 
 710 F.2d 292, 296 (7th Cir.1983) (en banc).
 
 See Yorger v. Pittsburgh Corning Corp.,
 
 733 F.2d at 1222-23. Furthermore, the disputed fact must be material, that is, it must be outcome-determinative under the applicable law.
 
 Egger v. Phillips,
 
 710 F.2d at 296.
 

 Applying these principles to this case, we find that there is no genuine issue of fact as to delivery. Big O produced statements of account showing sums due for tires delivered. MacQueen stated in his deposition that Big 0 delivered goods that
 
 *164
 
 were not paid for; that Warehouse owed Big 0 money; that Warehouse attempted to arrange repayment of the debt; and that he did not believe that anyone had responded to Big O’s statements of account sent to Warehouse. The direct evidence, and the only reasonable inference to be drawn from the evidence, shows that the goods were in fact delivered. Big 0 amply met its initial burden on the issue. Rule 56(e) clearly states,
 

 When a motion for summary judgment is made and supported as provided for in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.
 

 Defendants have made no attempt to meet the burden that the rule places on them. They did not assert the issue of failure of delivery at the time the motion was pending. Defendants’ only contest now to the issue of delivery is the general denial of their answer. They have provided no affidavits or other evidentiary material even suggesting a failure of delivery. Thus, the court was correct in finding no issue of fact as to delivery.
 

 Similarly, we find that there is no issue as to the amount due. Big 0 produced statements of account showing the amounts due. MacQueen in his deposition stated that he believed the amount to be accurate. At the proveup, the only witness, Frederick, testified to the amount of the debt. All of the evidence produced directly shows the amount. Defendants maintain that this proof is insufficient because Big 0 did not submit affidavits as to amount. Rule 56(a) by its terms does not require the moving party to submit affidavits, and Rule 56(c) allows the party to rely on other forms of proof. Again, defendants have not produced any specific facts showing that there is any doubt as to the amount due; they rely on the general denial of their answer and mere assertions that there is doubt. This plainly is not sufficient to create an issue of fact. Thus, the court was correct in finding no question of fact on this issue.
 

 However, we find that there is a genuine issue of fact as to the nature and identity of the entity that owes the debt. All three theories of recovery — the guaranty, the account stated, and partnership liability — depend on this question of fact. Joseph’s guaranty is of Warehouse’s debt; if the debt is owed by Coordinated, Joseph is not liable on the guaranty. Joseph, Alex, and Arra are not liable as partners of Warehouse if the debt is owed by Coordinated as a corporation. Similarly, they are not liable on an account stated if they were not liable for the debt as an original matter.
 
 [3]
 
 Thus, this question of fact is outcome-determinative.
 

 We find that Big 0 failed to meet its initial burden of proof on this point. The documents and depositions that Big 0 attached to its motion for summary judgment and the inferences to be drawn from them are at best inconclusive. The Dealer’s Agreement dated September 30, 1977, indicates that Big 0 entered into an agreement with Warehouse, a partnership. There is no evidence in the record that the partnership was ever formally terminated. Yet at some point prior to 1980, Warehouse’s assets were taken over by Coordinated; the deposition testimony was that Warehouse was just a name under which Coordinated operated. Moreover, in February 1979, Big 0 obtained personal guarantees from Joseph and Arra; these guaran
 
 *165
 
 tees would be unnecessary if Big 0 were dealing with a partnership. These conflicting facts and inferences give rise to a genuine issue of fact. This is perhaps best illustrated by the following argument from Big O’s brief:
 

 [G]iven the hard evidence in the Record of the inception of the Big O-Warehouse relationship, and the status of Warehouse as a partnership at that time, and the at best unsettled evidence of the nature of Warehouse’s alleged absorption into Big 0, the very timing of which is not at all settled,
 
 it cannot be said, as a matter of law, that the crucial issue of Big O’s dealing with Warehouse as a corporate entity is settled.
 

 Appellee’s Brief at 39-40 (emphasis supplied).
 

 • Because there is a genuine issue of material fact, we reverse the entry of summary judgment. On remand, the district court must determine, either through a renewed motion for summary judgment or through a trial, whether Warehouse is liable for the debt, and if so, whether Warehouse was a partnership during the relevant period. Reversed And Remanded.
 

 [1]
 

 . MacQueen died while this appeal was pending, His estate has not been substituted as a defendant.
 

 [2]
 

 . There is a difference in amounts because, pursuant to their guarantees, MacQueen and Joseph are liable for collection costs and attorneys’ fees.
 

 [3]
 

 . Illinois courts recognize the rule that “an account stated cannot create an original liability where none exists; it is merely a final determination of the amount of the existing debt.”
 
 Motive Parts Co. v. Robinson,
 
 53 Ill.App.3d 935, 941, 11 Ill.Dec. 665, 668, 369 N.E.2d 119, 122 (1977). Courts in other states have widely applied this rule to hold that there is no cause of action for an account stated against a third party who is not liable for the original debt.
 
 See, e.g., Chrysler Corp. v. Airtemp Corp.,
 
 426 A.2d 845, 849 (Del.Super.1980);
 
 Butterfly & Green, Inc. v. Mar-salona,
 
 26 Misc.2d 284, 203 N.Y.S.2d 565, 567 (1960).