**In re CHICAGO DISCOUNT COMMODITY BROKERS, INC., an Illinois Corporation, Debtor.**

**John K. NOTZ, Trustee of Estate of Chicago Discount Commodity Brokers, Inc., Plaintiff,**

v.

**Donna B. WEINER, Defendant.**

**Bankruptcy No. 80 B 14472.**
**Adv. No. 82 A 3935.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Jan. 15, 1986.

■

See also 58 B.R. 619.

Stephen P. Bedell, David F. Heroy, Keith E. Graham, of Gardner, Carton & Douglas, for Notz.

Katrina Veerhusen of Kevin M. Forde, Ltd., for Tate, et al.

Kenneth Denberg of Siegel, Denberg, Vanasco, Shukovsky, Moses & Schoenstadt, for Weiner.

Richard Golding of Lord, Bissell & Brook, for CLDC Management Corp.

Susan Pierson DeWitt, U.S. Trustee.

James J. Crowley of Loftus & Crowley, for Geschke.

### MEMORANDUM AND ORDER

JOHN D. SCHWARTZ, Bankruptcy Judge.

A voluntary case under Chapter 7, subchapter IV, of the Bankruptcy Code was commenced for Chicago Discount Commodity Brokers, Inc. ("CDCB"), by its court-ap-

pointed receiver on November 4, 1980. Prior to the commencement of the case CDCB was primarily engaged in the business of trading commodity futures contracts for its customers and was a "commodity broker" within the meaning of § 101(5) of the Bankruptcy Code. Plaintiff, John K. Notz is the duly appointed trustee for the estate of CDCB.

Presently before the court is the trustee's motion to strike and dismiss the affirmative defense of defendant, Donna B. Weiner. The trustee's motion will be denied.

The trustee filed a two count complaint against Weiner alleging prior to October 27, 1980, she, or her authorized agent, traded in commodities futures contracts through an account no. 800–80008 at CDCB. As of October 27, 1980, according to CDCB's books and records, defendant had a $3,000 balance in her account. That balance was based upon a $25,823.75 "cash received" credit on October 20, 1980. No cash was received on October 20, 1980. The true balance in defendant's account was a $22,823.75 deficit. In count I the trustee seeks recovery of the $22,823.75 deficit. In Count II he seeks to avoid and recover a $3,000 wire transfer from defendant's account as a preference.

Defendant pleaded an affirmative defense to the trustee's recovery of the $22,823.75 deficit. She admits authorization was given to trade her account, but states "said authorization was subject to various terms and conditions agreed upon by and between Defendant and her duly authorized agent. Said terms, among other things, restricted and reduced the potential liability of Defendant to zero."

The trustee has moved to strike defendant's affirmative defense. He argues any such agreement violated § 4b of the Commodity Exchange Act, 7 U.S.C. 6b, and Commodity Futures Trading Commission Rule 1.56, 17 C.F.R. § 1.56, and cannot be enforced.

Fed.R.Civ.P. 12(f) [Bankr.R. 7012(b)], provides the court may order any insufficient defense stricken from any pleading.

Fed.R.Civ.P. 12(f); *Marco Holding Co. v. Lear Siegler, Inc.*, 606 F.Supp. 204, 212 (N.D.Ill.1985). A motion to strike is ordinarily decided solely on the pleadings. *Id.* The court has considered matters outside the pleadings, specifically defendant's deposition testimony and exhibits. Therefore, the trustee's motion to strike will be "converted" into one for partial summary judgment under Fed.R.Civ.P. 56(d) [Bankr.R. 7056]. *Id.* at 213.

The trustee states Frank H. McGhee was defendant's agent and had discretionary authority to trade her account at CDCB, subject to terms and conditions. Specifically, McGhee would indemnify defendant against any margin calls, deficits or liability incurred by her customer trading account at CDCB.

At a Bankruptcy Rule 205(a) examination defendant testified she met McGhee at a party during the Summer of 1980. He stated he was with CDCB. He said he was a broker for this company and was interested in getting new accounts. She subsequently opened the account at CDCB with a $3,000 check dated June 23, 1980. McGhee said he, and his company, would cover any losses that occurred in her account. She gave him a check. He opened an account. He took care of everything else. Examination of Donna B. Weiner at 8–12, 46–47, *Notz v. Weiner*, No. 82 A 3935 (Bankr.N.D.Ill.1982) (filed Sept. 16, 1983).

Defendant also testified she did not deposit $25,823.00 into her account on October 20, 1980. That entry represents McGhee's reimbursement for all her losses. He said he had taken care of the matter. *Id.* at 22–25, 31–33.

Defendant typed the following statement on the October 9, 1980, Combined Commodity Statement for her account which indicated a $13,653.75 debit balance. *Id.* at 31–32, Exhibit 7.

THIS STATEMENT IS INCORRECT.

ON SEPTEMBER 22, 1980, FRANK MCGHEE WAS PERSONALLY TOLD BY ME TO SELL ALL GOLD CONTRACTS IN MY ACCOUNT, STOP ANY

FURTHER TRADING AND SEND ME A CHECK FOR THE BALANCE IN MY ACCOUNT. INSTEAD, HE BOUGHT MORE GOLD CONTRACTS AND PROCEEDED TO LOSE ALL THE PROFITS THAT I HAD ACCUMULATED. HE ASSURED ME THAT HE WOULD PERSONALLY REIMBURSE ME FOR ANY LOSSES DUE TO HIS ERRORS.

THE ENTRY IN MY ACCOUNT ON 10/20/80 FOR $25,823.75 REPRESENTS THE REIMBURSEMENT FROM FRANK MCGHEE TO COVER THE ERRORS THAT HE MADE CAUSING MY ACCOUNT TO LOSE MONEY WHEN HE TRADED CONTRARY TO MY INSTRUCTIONS. IS THERE A CLAIM THAT I CAN FILE FOR THE PROFITS I HAD BEFORE HE WENT AGAINST MY INSTRUCTIONS?

THE $3,000 REPRESENTS THE RETURN OF MY MARGIN MONEY AND CERTAINLY IS NOT A PREFERENCE. PLEASE LET ME KNOW IF I SHOULD FILE A CLAIM FOR MY LOST PROFITS.

The following letter to defendant from McGhee dated October 30, 1981, and notorized November 5, 1981, was introduced at the Rule 205(a) examination and attached to defendant's response.

This letter will serve as written confirmation of our verbal agreement entered into May 15, 1980 covering your account at Chicago Discount Commodity Brokers, Inc. As I stated, in order to make the trading decisions for your account, I agreed to assume all responsibility for any and all deficit balances, debits, and margin calls arising from my trading your account. All profits were to remain yours, solely.

Our further understanding was that Chicago Discount Commodity Brokers, Inc. would guarantee my performance of this agreement.

The trustee argues no agreement ever existed between defendant and CDCB. On November 5, 1981, when McGhee signed the letter, he had not been an officer of CDCB for over a year. McGhee had neither actual nor apparent authority to impose legal obligations upon CDCB after October 27, 1980, when CDCB went into receivership. The alleged confirmation letter cannot be binding upon CDCB.

The trustee will be entitled to partial summary judgment if the record shows there is no genuine issue as to any material fact and he is entitled to judgment as a matter of law. Fed.R.Civ.P. 56 (c); *Big O Tire Dealers, Inc. v. Big O Warehouse,* 741 F.2d 160, 163 (7th Cir.1984). The court must view the evidence and any reasonable inferences to be drawn therefrom in the light most favorable to defendant, the party opposing the motion. *Id.* 741 F.2d at 163.

The parties do not dispute Frank McGhee made some form of guarantee against loss or liability. "Reputable members of the industry are not in the habit of making guarantees of this nature to customers." *Ergas v. Bache Halsey Stuart Shields, Inc.* [1980–1982 Transfer Binder] Comm. Fut.L.Rep. (CCH) ¶ 21,140 (Painter A.L.J. 1980). Since 1978 the Commodity Future Trading Commission ("Commission") has required futures commission merchants furnish customers with a risk disclosure statement advising them "[t]he risk of loss in trading commodity future contracts can be substantial. ... You may sustain a total loss of the initial margin funds and any additional funds that you deposit with your broker ..., and you will be liable for any resulting deficit in your account." Commodity Future Trading Commission Rule 1.55, 17 C.F.R. § 1.55, Comm.Fut. L.Rep (CCH) ¶ 2190.

The Commission now specifically prohibits futures commission merchants or brokers from guaranteeing a person against loss or limiting losses. Commodity Future Trading Commission Rule 1.56, 17 C.F.R. § 1.56, Comm.Fut.L.Rep. (CCH) ¶ 2191. Rule 1.56 provides it shall not affect any guarantee entered into prior to January 28, 1982, its effective date. Commodity Future Trading Commission Rule 1.56(e), 17 C.F.R. § 1.56(e), Comm.Fut.L.Rep. (CCH) ¶ 2191. However, defendant's argument

the Commission therefore recognized the validity of pre-existing guarantees, such as the one made to her by McGhee, is without merit.

Commission Interpretative Letter No. 77–16 released in October of 1977 states: "we believe, for example, that Section 6b(2) [anti-fraud] prohibits oral or written assurance of profit to customers or prospective customers and any suggestion or claim of profit potential *that does not fairly represent the possibility of loss"*. Commodity Futures Trading Commission Interpretative Letter No. 77–16, Comm.Fut.L.Rep. (CCH) ¶ 20,498 (released Oct. 28, 1977) (emphasis added).

■ Guaranteeing a customer against loss violated § 4b of the Commodity Exchange Act, 7 U.S.C. § 6b, before the Commission adopted Rule 1.56, 17 C.F.R. § 1.56. Section 4b, the Act's antifraud provision, is similar in language and intent to § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j. *Hirk v. Agri-Research Council, Inc.*, 561 F.2d 96, 104 (7th Cir.1977); *Hagstrom v. Breutman*, 572 F.Supp. 692, 696 (N.D.Ill.1983). It "prohibits any person from engaging in fraudulent or deceptive practices 'in or in connection with' futures transactions [or attempting] to defraud or to deceive 'in or in connection with' those activities". *Hirk v. Agri-Research Council, Inc.*, 561 F.2d at 103.

In *Hirk v. Agri-Research Council, Inc.*, 561 F.2d 96 (7th Cir.1977), the court held the complaint stated a cause of action under § 4b. During the course of soliciting the commodity trading agreement the defendant represented, among other things, that plaintiff would lose no more than $7,500 and his account would not fall below $2,500. *Id.* at 98, 104. In *Beshara v. Spath*, [1977–1980 Transfer Binder] Comm.Fut.L.Rep. (CCH) ¶ 20,616 (Duncan A.L.J.1978), the Commission held, *inter alia*, commodity trading advisors violated § 4b by guaranteeing the complainants against loss of their initial deposits. *Id.* Accord, *Miller v. Kinch*, [1980–1982 Transfer Binder] Comm.Fut.L. Rep. (CCH) ¶ 21,488 (1982) (Respondent guaranteed commodities customer would lose no more than $5,000 on his investment.) In *Nelson v. Hench*, [1977–1980 Transfer Binder] Comm.Fut.L.Rep. (CCH) ¶ 20,437 (D.Minn. 1977), the district court held, *inter alia*, defendant violated SEC Rule 10b5 by representing he would reimburse the plaintiffs for any losses incurred while he traded the commodity futures account for them. *Id.* The Commission has held with respect to commodity options that it is a *per se* violation of Commission Rule 32.9, 17 C.F.R. § 32.9 [anti fraud] to guarantee a customer against risk of loss. *Navarra v. British American Options Corp.* [1977–1980 Transfer Binder] Comm.Fut.L.Rep. (CCH) ¶ 20,857 (Shipe A.L.J.1979).

■ Defendant's argument that the violation lies not in making the guarantee against loss, but in failing to honor it, is unpersuasive. The Act is violated by making such a guarantee and thus misrepresenting the risk of trading commodity futures contracts, which is substantial, to the investor. *See, Beshara v. Spath*, [1977–1980 Transfer Binder] Comm.Fut.L.Rep. (CCH) ¶ 20,616 (Duncan A.L.J.1978).

■ Any agreement McGhee made that restricted and reduced defendant's potential liability to zero violated § 4b of the Act, 7 U.S.C. § 6b. In addition, the record suggests McGhee bought gold contracts after defendant instructed him to stop any further trading in her account. If such unauthorized trading occurred it would also constitute a violation of the Act. *Ray E. Friedman & Co. v. Jenkins*, 738 F.2d 251, 253 n. 4 (8th Cir.1984).

■ The law is clear. If a contract is entered into in violation of statutory or regulatory law, it is unenforceable. *Comdisco v. United States*, 756 F.2d 569, 576 (7th Cir.1985); *Broverman v. City of Taylorville*, 64 Ill.App.3d 522, 526, 21 Ill.Dec. 264, 267, 381 N.E.2d 373, 376 (1978). An agreement that violates § 4b of the Commodity Exchange Act is also unenforceable as a matter of public policy. *See Hogan v. Teledyne, Inc.*, 328 F.Supp. 1043, 1046–1047 (N.D.Ill.1971).

■ The court is mindful the primary focus of § 4b of the Act "is to protect buyers and sellers of futures contract from fraud practiced by their brokers". *Woods v. Reno Commodities, Inc.*, 600 F.Supp. 574, 578 (D.Nev.1984). The law which makes any guarantee agreement unlawful was intended to protect investors like defendant. A futures commission merchant who violates the Act can be denied recovery of the customer's deficit balance, *See Herman v. T & S Commodities, Inc.*, 592 F.Supp. 1406, 1422 (S.D.N.Y.1984), or be required to pay the customer a reparation award. 7 U.S.C. § 18; *see also e.g. Miller v. Kinch*, [1980–1982 Transfer Binder] Comm.Fut.L.Rep. (CCH) ¶ 21,488 (1982) ($49,059.25 awarded investor guaranteed a loss of no more than $3,000). In addition, under § 2 of the Act, 7 U.S.C. § 4, "[t]he fraudulent actions of an agent are imputed to his principal." *Woods v. Reno Commodities*, 600 F.Supp. 574, 578 (D.Nev. 1984).

Defendant does contend the guarantee against loss was also a hold-harmless agreement directly from CDCB. She testified McGhee told her, he and his company would cover any losses. The alleged confirmation letter defendant offered was written long after any verbal agreement was reached and is entitled to little, if any, weight. The trustee argues McGhee did not have actual or apparent authority to impose legal obligations upon CDCB after October 27, 1980. When the alleged confirmation letter was signed he had not been an officer of CDCB for over a year. In the court's opinion, the possibility remains, however remote, that McGhee was an officer of CDCB and had such apparent or actual authority when he made any assurances or guarantees to defendant, since this occurred prior to October 27, 1980.

To prevent a summary judgment in the trustee's favor, this disputed fact must be material, outcome-determinative under applicable law. *Big O Tire Dealers, Inc., v. Big O Warehouse*, 741 F.2d 160, 163 (7th Cir.1984). If defendant can establish under § 2 of the Act, 7 U.S.C. § 4, McGhee's violation of the Act is, in fact, imputed to CDCB, she may have a defense against the trustee. *See* 7 U.S.C. § 4; *Herman v. T & S Commodities*, 592 F.Supp. 1406, 1422 (S.D.N.Y.1984); *Hogan v. Teledyne, Inc.*, 328 F.Supp. 1043, 1046–47 (N.D.Ill.1971). Generally, neither party to an illegal contract may obtain judicial relief. In such cases, the court leaves the parties as it finds them, and does not assist either. *Manning v. Metal Stamping Corporation*, 396 F.Supp. 1376, 1379 (N.D.Ill.1975); *Broveman v. City of Taylorville*, 64 Ill. App.3d at 527, 21 Ill.Dec. at 267, 381 N.E.2d at 376.

■ Defendant did assert the guarantee agreement's legality, as opposed to its illegality, in defense of the trustee's motion. Illinois law, however, does not permit a party to be estopped from asserting an illegality defense. *Nathan v. Tenna Corp.*, 560 F.2d 761, 763 (7th Cir.1977).

■ Success on the merits is rather unlikely, but defendant has raised a genuine issue of material fact for trial. Therefore, at this time, her affirmative defense will not be stricken.

IT IS THEREFORE ORDERED the motion of plaintiff JOHN K. NOTZ, trustee of the estate of Chicago Discount Commodity Brokers, Inc., to strike the affirmative defense of defendant DONNA B. WEINER is denied; and this matter is set for status on February 4, 1986 at 10:30 a.m.