**In the Matter of C & S GRAIN COMPANY, INCORPORATED, Debtor–Appellant.**

**No. 94–1976.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 10, 1994.

Decided Feb. 8, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied March 8, 1995.

234

Karen L. McNaught, Asst. Atty. Gen., Office of the Atty. Gen., Springfield, IL, Jerald S. Post, Asst. Atty. Gen. (argued), Office of the Atty. Gen., Civ. Appeals Div., Chicago, IL, for Ill. Dept. of Agriculture.

Thomas Smith, Steve Miller, Derek J. Girton, Acton & Snyder, Danville, IL, for Palmer American Nat. Bank, Tim Thornsbrough, Opal Smith, Mike Nicholson, Harold Perry, Barbara Thornsbrough, Steve Thornsbrough, First Midwest Bank/Danville.

Thomas Smith, Robert Acton, Steve Miller, Derek J. Girton, Acton & Snyder, Danville, IL, for Mary L. Cameron, Jeff Acton.

Timothy Smith, Smith & Kagawa, Danville, IL, for First Nat. Bank of Danville, Ill.

James L. Brougher, Gunn & Hickman, Danville, IL, for William F. Matthews.

Steve Miller, Acton & Snyder, Danville, IL, for Gertrude Moore, John Lee.

Clyde Meachum, Meachum & Meachum, Danville, IL, for Rossville Packing Co.

Bruce Meachum, Meachum & Meachum, Danville, IL, Larry Frerichs, Harms Farms.

D. Phillip Anderson (argued), U.S. Trustee, Peoria, IL, Martha L. Davis, Leander D. Barnhill, Executive Office for U.S. Trustees, Washington, DC, for U.S. Trustee.

Barbara K. Parker, Thomas W. O'Neal (argued), Westervelt, Johnson, Nicoll & Keller, Peoria, IL, James L. Van Winkle, Van Winkle & Van Winkle, McLeansboro, IL, for C & S Grain Co., Inc.

Before POSNER, Chief Judge, and COFFIN * and BAUER, Circuit Judges.

* The Honorable Frank M. Coffin, Circuit Judge of the United States Court of Appeals for the First Circuit, is sitting by designation.

BAUER, Circuit Judge.

C & S Grain Company, a debtor in bankruptcy, appeals from a decision of the district court affirming a bankruptcy court's orders pertaining to the disposition of its grain reserves. Because we find no justification for disturbing the decisions below, we affirm.

C & S Grain was formed for purposes of buying, selling, and storing grain. During the months preceding its bankruptcy, C & S Grain struggled to maintain the debt-to-equity ratio that was required under the conditions of its grain dealer's and warehouseman's licenses. After unsuccessfully attempting to improve its weakening financial position, C & S Grain finally surrendered its grain licenses to the Illinois Department of Agriculture ("Department") on December 13, 1993. Upon surrender of a grain license, the Department is entitled to liquidate immediately the unlicensed dealer's grain reserves. 20 ILCS 205/40.23. The Department decided, however, to allow C & S Grain a week in which to either remedy its financial situation or find a suitable successor to continue operation of the grain facility. Instead, on December 20, 1993, C & S Grain filed for bankruptcy under Chapter 11 of the Bankruptcy Code, thereby temporarily staying any action by the Department to liquidate its grain reserves.

The Department sought and obtained an order relieving it from the provisions of the automatic stay on January 6, 1994, after the bankruptcy court determined that the creditors were better protected if the Department were to liquidate the debtor's grain assets. The court also granted motions made by several parties each of whom had entered into so-called "to arrive" contracts with C & S Grain and each of whom, in light of the bankruptcy, sought to be excused from the remaining obligations of those contracts. These contracts required the moving parties to sell grain to C & S Grain at a specified price at a future date. Finding that upon relinquishment of its license, C & S Grain was no longer authorized to perform such contracts, the court declared the contracts void for illegality. In so holding, the court denied C & S Grain's request to appoint the Department as a limited trustee with the power to assume or reject the "to arrive" contracts. The district court affirmed the bankruptcy court's decision in all respects.

C & S Grain wishes to handle the disposition of its grain assets on its own by assuming the "to arrive" contracts and assigning them to entities capable of performing their underlying obligations. By doing so, C & S Grain believes that it will earn substantial revenues from which it can pay its creditors. To aid it in this endeavor, C & S Grain asks that we reverse three decisions of the bankruptcy court: the denial of C & S Grain's motion requesting a limited trustee, the granting of the several motions for rejection of the "to arrive" contracts, and the granting of the Department's motion for relief from the automatic stay.

 Although we review a bankruptcy court's factual findings for clear error, we evaluate its legal decisions *de novo*. *In re West*, 22 F.3d 775, 777 (7th Cir.1994). The court's decision refusing to appoint the Department as a limited trustee was justifiable on several grounds. First, the authority to select the bankruptcy trustee resides in the United States Trustee, subject only to the court's approval. 11 U.S.C. § 1104(c).[1] Second, the Bankruptcy Code requires that a trustee be a "disinterested person." *Id.* The Department is neither disinterested nor a person under the terms of the statute. It is not disinterested because as administrator of the Illinois Grain Insurance Fund—an indemnity fund from which creditors of failed grain dealers and warehousers are paid—the Department, through its subrogation rights, stands to become one of C & S Grain's more significant creditors. Nor is the Department a person as defined by the Bankruptcy Code; governmental units are specifically excluded from the definition. 11 U.S.C. § 101(41).

---

1. Section 1104(c) states in relevant part:
 If the court orders the appointment of a trustee or examiner, ... then the United States trustee, after consultation with parties in interest, shall appoint, subject to the court's approv-
al, one disinterested person other than the United States trustee to serve as trustee or examiner, as the case may be, in the case. 11 U.S.C. § 1104(c).

For all of the foregoing, the bankruptcy court's refusal to appoint the Department as a trustee and the district court's affirmance of this decision were appropriate.

■ We consider next the court's decision on the rejection of the "to arrive" contracts. C & S Grain sought to assume and assign the contracts to licensed grain dealers who would be willing to perform C & S Grain's obligations under the contracts and who would pay C & S Grain for that right. C & S Grain claims that as long as its assignee could provide adequate assurance of future performance, namely that the debtor's contract partner would receive the benefit of its bargain under the contract, C & S Grain was entitled to assign profitable executory contracts for performance by third parties. 11 U.S.C. § 365(a), (f)(2).

■ The Bankruptcy Code does indeed allow debtors to assume and assign executory contracts with court approval. 11 U.S.C. § 365(a), (f)(1).[2] A threshold matter, however, is whether the contracts were in fact executory. For if the "to arrive" contracts were either completed or terminated before the bankruptcy filing, C & S Grain could not have assumed them.

■ For purposes of the Bankruptcy Code, an executory contract is one in which the obligations of each party remain substantially unperformed. *In re Chicago, Rock Island & Pac. R.R. Co.*, 604 F.2d 1002, 1003–04 (7th Cir.1979). Consequently, "when the debtor has not only failed to perform but has breached the contract pre-petition with the result that the other party has no further duty to perform, ... the contract is no longer executory for purposes of section 365." *In re Murtishi*, 55 B.R. 564, 567 (N.D.Ill. 1985). The extent of a party's obligations after another party repudiates its own obligations is a matter of state law. *See In re Streets & Beard Farm Partnership*, 882 F.2d 233, 235 (7th Cir.1989) (referring to state law to determine whether a contract remained executory).

■ In Illinois, once a statute imposes licensure as a precondition for operation and provides a penalty for its violation, a contract for the unlicensed performance of that act is void. *See T.E.C. & Assocs., Inc. v. Alberto-Culver Co.*, 131 Ill.App.3d 1085, 87 Ill.Dec. 220, 228, 476 N.E.2d 1212, 1220 (1985); *Broverman v. City of Taylorville*, 64 Ill.App.3d 522, 21 Ill.Dec. 264, 267, 381 N.E.2d 373, 376 (1978). Therefore implicit in every grain contract entered into by C & S Grain was an assurance that it was licensed to deal and store grain. But by surrendering its licenses to the Department, C & S Grain declared itself unable to perform and effectively repudiated its contractual obligations. Upon one party's anticipatory repudiation, the other party is entitled to rescind the contract for all purposes of performance. *Ahern v. Knecht*, 202 Ill.App.3d 709, 150 Ill.Dec. 660, 665, 563 N.E.2d 787, 792 (1990). Unless the non-repudiating party wishes to hold the repudiator responsible for contract damages, the non-repudiating party need not make efforts to keep the contract in force. *Builder's Concrete Co. v. Fred Faubel & Sons, Inc.*, 58 Ill.App.3d 100, 15 Ill.Dec. 517, 522, 373 N.E.2d 863, 868 (1978). Put another way, in the face of clear evidence of an intent to repudiate, the non-repudiating party is no longer under an obligation to perform. Because one party is not obligated to perform, the contract is no longer executory as defined in bankruptcy.

This analysis supports the decisions rendered in this case. The parties with whom C & S Grain had contracted were relieved of their duties to perform when C & S Grain relinquished its licenses. No longer executory, their contracts could no longer be assumed by C & S Grain, and therefore, the bankruptcy court's decision to grant the motions to excuse their performance on the "to arrive" contracts was correct.

■ Left for our consideration then is the court's decision granting the Department relief from the automatic stay. Section 362(a) establishes that the filing of a bankruptcy petition serves to stay proceedings

---

**2.** Though section 365 consistently speaks of a trustee's rights and obligations in assuming and assigning executory contracts, it is clear that a

debtor in possession may also exercise the rights of a Chapter 11 trustee. 11 U.S.C. § 1107(a).

involving the debtor's property. 11 U.S.C. § 362(a). Nevertheless, a court may grant a party relief from the stay if it finds that the moving party's interest in the property can be better protected or for any other cause the court finds to be worthy. 11 U.S.C. § 362(d)(1). The decision as to whether to lift the stay is committed to the discretion of the bankruptcy court and, therefore, we review the court's decision for an abuse of discretion. *In re Boomgarden,* 780 F.2d 657, 660 (7th Cir.1985).

In situations where a debtor in bankruptcy holds grain assets, the perishability of those assets makes time a critical factor. *See* 11 U.S.C. § 557 (permitting the bankruptcy court to provide for an expedited determination of interests in grain assets). In this instance, the court determined that unless C & S Grain was able to regain its license, it would be unable, on its own, to liquidate its rapidly perishing grain assets. Its chances of getting relicensed hinged, in turn, on C & S Grain's ability to reorganize. At the time the court rendered its decision, C & S Grain had done nothing to suggest that its prospects for reorganization were imminent. The bankruptcy court therefore granted the Department's motion.

■■■ Upon the failure of a grain dealer or warehouser, Illinois law vests the Department with the power to liquidate the failed dealer's grain assets on behalf of those claimants who hold a statutory lien in those assets. 20 ILCS 205/40.23. C & S Grain contends that the filing of the bankruptcy petition preempts state law and concludes that therefore, the Department's right to liquidate under state law was irrelevant.

■■■ This argument mischaracterizes the nature of the decision. In granting the motion, the bankruptcy court was not simply applying the state law without regard for the tenets of the federal bankruptcy statute. Rather, the court was assessing whether there was "cause" for lifting the stay under section 362(f)(1) of the Bankruptcy Code itself. In determining whether cause exists,

the bankruptcy court should base its decision on the hardships imposed on the parties with an eye towards the overall goals of the Bankruptcy Code. *See In re Opelika Mfg., Corp.,* 66 B.R. 444, 453 (N.D.Ill.1986). Among the permissible justifications for modifying the stay is whether such action will benefit the debtor. *Id.* at 453. In its calculation, the court properly considered the perishability of grain and the likelihood that the debtor would regain its license and concluded that the debtor and its creditors would be better served if the Department intervened and liquidated the grain assets. Such a decision, made for the benefit of all involved, was eminently sound, far from an abuse of discretion, and does not merit reversal.

Unpersuaded by C & S Grain's arguments, we conclude that the bankruptcy court's disposition in this matter was proper in all respects. In light of the foregoing, the decision of the district court affirming the orders of the bankruptcy court is also

· AFFIRMED.