Ken PIERCE, Jr., Plaintiff–Appellant,

v.

**COMMONWEALTH EDISON COMPANY, Defendant–Appellee.**

No. 96–2886.

United States Court of Appeals,
Seventh Circuit.

Argued April 8, 1997.

Decided April 30, 1997.

Donna Hickstein-Foley, Chicago, IL, Michael J. Foley (argued), Foley & Foley, Chicago, IL, for Plaintiff-Appellant.

Brian J. Gold, Lisa D. Freeman, James D. Weiss, Sidley & Austin, Chicago, IL, Glenn D. Newman (argued), Robert Guritz, Carolyn Kohn Winick, Commonwealth Edison Company, Chicago, IL, for Defendant-Appellee.

Before EASTERBROOK, KANNE, and DIANE P. WOOD, Circuit Judges.

EASTERBROOK, Circuit Judge.

During an investigation of his actions as a nuclear station operator at the Dresden nuclear power plant, Ken Pierce lied about his handling of a control rod. So Pierce's employer, Commonwealth Edison Company, concluded; it fired him for dishonesty, and after a four-day hearing an arbitration board agreed. Pierce then commenced a suit in Illinois court, asking the judge to reinstate him. Commonwealth Edison removed the case to federal court, and the district court granted summary judgment in its favor.

Topic No. 1, which the district judge did not discuss, is whether the case comes within the subject-matter jurisdiction of the federal courts. According to Pierce's brief, jurisdiction rests on 29 U.S.C. § 185 and 42 U.S.C. § 2021(c)(4). The latter citation is mystifying. Section 2021 deals with cooperation agreements between states and the Nuclear Regulatory Commission. No cooperation agreement is at issue, and at all events subsection (c)(4) has nothing to do with jurisdiction. It provides that a cooperation agreement may not divest the NRC of authority to regulate the disposal of nuclear byproducts that the Commission deems espe-

cially hazardous. Section 185(a), commonly known as § 301 of the Labor–Management Relations Act, grants jurisdiction to hear "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce". Jurisdiction based on § 301 has a limitation: the litigant must be an employer or labor organization, and Pierce is neither. To use § 301, therefore, Pierce must establish that his union breached its duty of fair representation. *Chauffeurs, Teamsters Local No. 391 v. Terry*, 494 U.S. 558, 564, 110 S.Ct. 1339, 1344, 108 L.Ed.2d 519 (1990). Yet Pierce has not named the union as a party and has not attempted to establish the elements of such a claim. See *United Steelworkers of America, AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990); *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991). At oral argument Pierce asserted that his claim is not based on, and does not require interpretation of, the collective bargaining agreement, and therefore does not depend on proof that the union violated its duty. Apparently this is how the district judge understood the claim. If this is so, then there is no federal jurisdiction. It cannot be so, however; artful pleading does not enable an employee to avoid the union's status as the exclusive bargaining representative. The collective bargaining agreement includes a "just cause" clause; the board of arbitrators, appointed under that agreement, concluded that Commonwealth Edison had just cause to discharge Pierce. Any effort to upset this decision necessarily affects the agreement between union and management reflected in the collective bargaining agreement. The district court erred in declining to consider Commonwealth Edison's argument that absence of the union as a party, and the omission of any claim that the union violated its duty as Pierce's representative, forecloses relief.

■ Nonetheless, it is not necessary to remand so that Pierce may try to satisfy these preconditions. Dragging the union into this case would be a waste of everyone's time and money because, even if the union were to appear as a plaintiff, the decision of the arbitral panel would be invulnerable. It heard evidence and found facts that establish just cause for discharge. Although Pierce believes that the findings are not correct, judges lack the authority to review arbitrators' findings that are free of any taint of fraud or corruption—and no such taint is alleged to exist. See *Hill v. Norfolk & Western Ry.*, 814 F.2d 1192, 1195 (7th Cir.1987).

■ Pierce's arguments reduce to the proposition that, as long as the NRC believes him fit to work in the nuclear power business, Commonwealth Edison must continue to employ him. Yet the holder of a commercial pilot's license does not automatically become a pilot on a commercial airline; why should Pierce receive the aid of a federal court in turning a license into a job? One argument is that Commonwealth Edison is bound by a decision of the Atomic Safety Licensing Board under principles of res judicata. Pierce improperly moved one of the reactor's control rods and did not log either that movement or the steps he took to place the rods in the proper position. Commonwealth Edison did not learn of the incident until two months later, and it then fired four employees who had known about the problem yet failed to report it. Agency staff entered an order barring Pierce from participating in activities licensed by the NRC, but the ASLB reversed after concluding that Pierce's handling of the control rod had not violated 10 C.F.R. § 50.5(a) or § 55.9. According to Pierce, this decision precludes Commonwealth Edison from discharging him. But why? (i) Commonwealth Edison was not a party to the ASLB's proceedings, and therefore is not bound under ordinary principles of preclusion. (ii) The ASLB did not make a finding one way or the other about whether Pierce lied (and tried to induce other employees to lie) during Commonwealth Edison's investigation, which is what led to his discharge. A finding on this question was not essential to the ASLB's decision and therefore cannot be imputed to the Board. So even if Commonwealth Edison had been a party, issue preclusion (collateral estoppel) would not interfere with its decision to fire Pierce. (iii) At all events a contract may specify the preclusive effect of an earlier decision or permit arbitrators to do so.

*Brotherhood of Maintenance of Way Employees v. Burlington Northern R.R.,* 24 F.3d 937 (7th Cir.1994). The panel of arbitrators decided that the ASLB's disposition did not affect the question at hand—whether Commonwealth Edison had just cause to fire Pierce. Pierce does not contend that in deciding the weight to be attached to the ASLB's decision the arbitrators substituted personal predilection for a contractual norm. The decision was otherwise within the arbitrators' power, for no rule of federal law forbids an employer to evince more concern for safety than does some federal regulator. Firms may make safer cars or drugs than federal agencies require; an airline may demand that its pilots exercise greater care than the minimum required for licensure (and fire those who do not).

As Pierce sees things, the ASLB's standards "preempt" contrary terms of the collective bargaining agreement. Doubtless this would be so if the agreement set standards below the federal minimum; management's promise to the union to employ operators who have been banished from the industry by the NRC would not be enforced. See *Iowa Electric Light & Power Co. v. Local 204,* 834 F.2d 1424 (8th Cir. 1987). Such a ban is an example of a federal rule that supersedes private agreements—and therefore supersedes decisions of arbitrators who implement those agreements. See *United Paperworkers v. Misco, Inc.,* 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987); *W.R. Grace & Co. v. Rubber Workers Local 759,* 461 U.S. 757, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983). An employer who sets higher standards does not offend public policy in this sense. Firms may demand that their workers be ethical as well as strictly honest; they may fire supervisors who tell ribald jokes, even though Title VII of the Civil Rights Act does not condemn all off-color humor; and they may insist that people who operate the controls of multi-billion dollar power plants that have the potential to inflict serious physical and economic injury be scrupulously careful and candid.

Safety on the job is a mandatory subject of collective bargaining, and courts must respect the parties' bargain unless the pact violates a rule of law. Arbitrators exercise power delegated from the contracting parties. If the president of a firm lawfully could decide to sack (or retain) a given employee, an arbitrator's decision to the same effect cannot be set aside on "public policy" grounds. See Bernard D. Meltzer, *After the Labor Arbitration Award: The Public Policy Defense,* 10 Industrial Relations L.J. 241 (1988); Harry T. Edwards, *Judicial Review of Labor Arbitration Awards: The Clash Between the Public Policy Exception and the Duty to Bargain,* 64 Chi.–Kent L.Rev. 3 (1988). What is lawful for the contracting parties is equally lawful for the arbitrator, as the holder of delegated power. Federal regulation of nuclear safety leaves substantial room for private ordering, including both tort and contract systems. See *Silkwood v. Kerr–McGee Corp.,* 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984). No federal law forbids employers from exceeding the minimum safety standards, so the arbitrators' decision must stand.

AFFIRMED.