**Johnny R. DAVIDSON, Plaintiff,**

v.

**WISCONSIN NATURAL GAS COMPANY, Defendant.**

**No. 96–C–1273.**

United States District Court, E.D. Wisconsin.

Nov. 24, 1997.

---

Peter M. Donohue, Phillips, Donohue & Cymerman, Milwaukee, WI, for Plaintiff.

Lynne E. English, Legal Dept., Wisconsin Elec. Power Co., Milwaukee, WI, for Defendant.

## DECISION AND ORDER

CURRAN, District Judge.

Johnny Davidson is suing his former employer, Wisconsin Natural Gas Company, for breaching the collective bargaining agreement which governed his employment. He seeks reinstatement, back wages, and compensatory damages of $300,000 pursuant to 29 U.S.C. § 185(a). Davidson, who was discharged after he repeatedly tested positive for cocaine, claims that the Defendant's acts deprived him of an opportunity to challenge the positive drug tests. According to the Plaintiff, this court has federal question jurisdiction over this matter.[1] *See* 28 U.S.C. § 1331.

After the deadline for the completion of discovery passed, the Defendant moved for summary judgment on the ground that no material facts are in dispute and that it is entitled to judgment as a matter of law. *See* Federal Rule of Civil Procedure 56(c). In connection with this motion the Defendant has filed a list of proposed facts which are supported by documents in the record. The Plaintiff has not filed a timely response to the motion and has not challenged any of the Defendant's proposed facts. Therefore, the court concludes that there is no genuine issue as to any of the Defendant's proposed findings. *See* Local Rule 6, § 6.05.

## I. *FACTS*

The following facts, proposed by Wisconsin Natural Gas Company (WN), are uncontested:

1. Johnny Davidson was employed as a Customer Account Representative with WN in 1993.

2. Mr. Davidson was represented for collective bargaining purposes by Local 2150 of the International Brotherhood of Electrical Workers ("Union") and a collec-

---

1. At the scheduling conference held on May 16, 1997, the Plaintiff's counsel stated that he is seeking relief pursuant to 29 U.S.C. § 185. He did not avail himself of the scheduled opportunity to amend his Complaint to include this allegation.

tive bargaining agreement governed his terms and conditions of employment.

3. The Company implemented a Fitness for Duty Program in 1990 to comply with the Federal Department of Transportation's regulations requiring drug testing for occupations related to gas pipeline operations. The program requires certain occupations to be subject to various forms of drug testing, including random testing.

4. In March, 1993, Mr. Davidson's position became subject to the Company's Fitness for Duty Program because he provided back-up support to the telephone group which responded to emergency calls.

5. Mr. Davidson was selected for a random drug test on June 28, 1993.

6. The June 28, 1993 test showed a positive result for cocaine.

7. Mr. Davidson had a cocaine addiction for the past five years and had ingested cocaine prior to the June 28, 1993 random test.

8. Mr. Davidson told the Medical Review Officer who informed him of the positive test result that he was not using cocaine.

9. Mr. Davidson requested a re-test of the June 28, 1993 sample, but was informed by Company personnel that it was beyond the 72–hour period following notification of a test result within which to make such a request.

10. Mr. Davidson was indefinitely suspended and was referred to the Company's Employee Assistance Program.

11. After completion of a rehabilitation program, and a negative drug test, Mr. Davidson was returned to work on September 20, 1993 under the terms of a "last chance agreement."

12. The period from July 1, 1993 until Mr. Davidson returned to work was converted to a disciplinary layoff without pay.

13. The last chance agreement provided, in pertinent part, as follows:

In the event Mr. Davidson is disciplined (including discharge) by the company for any violation of WN's Fitness–for–Duty Policy, his and the union's right to appeal such disciplinary action shall be limited to the internal steps of the grievance procedure; the company's decision at the last internal step of the grievance procedure shall be binding. Notwithstanding any provision of the labor agreement to the contrary, Mr. Davidson and the union waive any rights to arbitrate such decision. (It is understood that if Mr. Davidson tests positive for the presence of any prohibited drug or the metabolite of any prohibited drug, he shall be discharged.) The company will evaluate the need to continue the periodic Drug Testing five years after the date of execution of this agreement.

14. Under the last chance agreement, the Company was able to test Mr. Davidson on a periodic basis at any time at its discretion.

15. The Company requested Mr. Davidson to undergo his first periodic drug test on November 2, 1993.

16. The sample taken on November 2, 1993 tested positive for cocaine.

17. Mr. Davidson was discharged November 9, 1993.

18. Between November 12, 1993 until December 21, 1993, Mr. Davidson verbally requested a re-test from Company personnel on several occasions and was told that it was beyond the 72–hour time period for such a request.

19. Mr. Davidson's Union, Local 2150, IBEW, contacted the Company shortly after his discharge and requested documentation regarding Mr. Davidson's testing on November 2,1993, including the chain of custody form and test results.

20. After the Company sent this information to the Union, the Union requested a hearing before the Company's President, requesting a by-passing of the other steps of the internal grievance procedure under the collective bargaining agreement.

21. On December 21, 1993, a hearing was held before Ron Espe, the Company's President, at which Mr. Davidson was represented by the Union. Mr. Espe issued a letter on December 28, 1993 denying the grievance and upholding the discharge.

22. The Company's Fitness for Duty Program provided for two different re-test opportunities for employees who have had positive test results. Because the Company uses the "split sample" method of collection, the employee has the right to request a re-test of the split sample within 72 hours of receiving notice of the positive test. An employee may also request a retest of the same sample within 60 days of receipt of the final test results from the medical review officer.

23. The Fitness for Duty Program brochure distributed to employees explained the right to a re-test of the sample within 72 hours, but did not specifically mention the right to request a re-test of the same sample within 60 days. The completion plan document explained both types of retest rights.

24. Mr. Davidson applied for unemployment compensation with the State of Wisconsin, and appealed an initial determination that he was ineligible for such benefits due to misconduct. At the hearing in this matter, the Company introduced as evidence the positive test results from June 28 and November 2, 1993 to establish misconduct.

25. Following a hearing before an Administrative Law Judge ("ALJ") from the Unemployment Compensation Division on January 4, 1994, the ALJ upheld the initial determination and found that Mr. Davidson was ineligible for benefits due to misconduct under the unemployment compensation statute.

26. Due to statements Mr. Davidson made in his unemployment compensation hearing regarding his desire to have a retest, and having become aware of the different re-test rights the program provided, Ms. Olivares contacted him, through his Union representative, on January 6, 1994 to inform him that he could still request a re-test of his sample under the 60–day time period for making such a request.

27. On January 10, 1994, Mr. Davidson made a written request for the re-test.

28. On January 12, 1994, Ms. Olivares sent Mr. Davidson a letter containing a list of laboratories to which he could request that his sample be sent for re-testing. Once Mr. Davidson identified a laboratory of his choosing, the Company would inform him of the cost of such a re-test, which he would need to pay in advance.

29. Ms. Olivares, who wrote this letter to Mr. Davidson, included a date of November 19, 1994 by mistake, so that the letter read that he had until that date to designate a laboratory to which he wanted his sample sent.

30. The Department of Transportation regulations, and WN's plan, require a laboratory to retain a frozen sample for 365 days after the date of collection, unless the employer, the employee, or other named party requests that it be retained longer.

31. Ms. Olivaries [sic] did not realize that she had given Mr. Davidson more than 365 days from the date of the sample collection in which to make his request and therefore made no request to the laboratory that it retain Mr. Davidson's original sample for more than 365 days.

32. On November 28, 1994, Ms. Olivaries [sic] received an unpostmarked letter from Mr. Davidson which was dated November 19, 1994 requesting that Mr. Davidson's sample be sent to a laboratory in Memphis, Tennessee.

33. The Company contacted the laboratory which had tested Mr. Davidson's November 2, 1993 sample and was informed that his sample from that date had been discarded, as 365 days since the date of collection had passed.

34. Although Mr. Davidson requested that the Union continue to challenge his discharge, and the Union informed him that it would not do so.

35. Mr. Davidson complained to the Public Service Commission of Wisconsin. After several communications, the Commission determined that the Company had violated Wis. Admin. Code § PSC Chap. 135 (in which the Commission has adopted the U.S. Department of Transportation, Office of Pipeline Safety Drug Testing Regulations) in three ways: by not having a written procedure in the drug plan stating how employees are notified of the coverage and provisions of the plan; by giving

Mr. Davidson more than 60 days to request a re-test of his sample, contrary to the plan terms; and by releasing his drug test result in an unemployment compensation hearing without his prior written consent.

36. As a result of these findings, the Commission ordered that the Company provide training to all employees who are subject to the random drug testing program, and revise its written procedures to explain how employees are informed of its provisions.

Memorandum in Support of Defendant's Motion for Summary Judgment at 1–7 (citations omitted).

## II. LEGAL STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the court can determine that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(c). The Supreme Court has held that summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The court must view the record and all inferences drawn from it in the light most favorable to the party opposing the motion. *See Carston v. County of Cook*, 962 F.2d 749, 751 (7th Cir.1992), *cert.*

*denied,* 506 U.S. 1052, 113 S.Ct. 974, 122 L.Ed.2d 128 (1993). The party moving for summary judgment has the burden of establishing the lack of a genuine issue of material fact. *See Big O Tire Dealers, Inc. v. Big O Warehouse,* 741 F.2d 160, 163 (7th Cir.1984). Even where, as here, the nonmovant has failed to respond, summary judgment cannot be entered where the moving party fails to meet this strict burden. *See Id. See also Cooper v. Lane,* 969 F.2d 368, 371 (7th Cir. 1992). However, "it is always prudent to respond to a motion for summary judgment, even if the opposing party believes that the movant has failed to sustain [its] initial burden." *Big O Tire Dealers,* 741 F.2d at 163 (quoting *Egger v. Phillips,* 710 F.2d 292, 296 (7th Cir.1983)).

 A plaintiff opposing summary judgment must show that he has plausible grounds for maintaining the cause of action alleged in the complaint. If the movant's evidence tends to show that the opposing party's claim is baseless, then the opposing party must adduce countervailing evidence or he must raise a substantial question as to the veracity of completeness of the movant's showing. *See Kelley v. Board,* 651 F.Supp. 407, 408 (N.D.Ill.1987).

## III. DISCUSSION AND DECISION

 In moving for summary judgment, WN argues that Davidson does not have a valid claim under 29 U.S.C. § 185 (commonly known as "section 301").[2] In analyzing a

2. Section 185 of Title 29 of the United States Code provides that:

**(a) Venue, amount, and citizenship**

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

**(b) Responsibility for acts of agent; entity for purposes of suit; enforcement of money judgments**

Any labor organization which represents employees in an industry affecting commerce as defined in this chapter and any employer whose activities affect commerce as defined in this chapter shall be bound by the acts of its agents. Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States. Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets.

**(c) Jurisdiction**

For the purposes of actions and proceedings by or against labor organizations in the district courts of the United States, district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members.

purported section 301 claim, the United States Supreme Court has explained that: "[w]hether the employee sues both the labor union and the employer or only one of those entities, he must prove the same two facts to recover money damages: that the employer's action violated the terms of the collective bargaining agreement and that the union breached its duty of fair representation." *Chauffeurs, Teamsters & Helpers, Local 391 v. Terry*, 494 U.S. 558, 564, 110 S.Ct. 1339, 1344, 108 L.Ed.2d 519 (1990).

 In this case, Davidson has not named his union as a party and has not attempted to establish that his union violated its duty of fair representation. This duty requires the union to enforce the contractual rights of employees in a manner that is not arbitrary, discriminatory, or in bad faith. *See Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). Davidson's Complaint contains no allegations about his union and, in the absence of any response to the summary judgment motion, the court must conclude that Davidson cannot prove that his union breached its duty of good faith. *See Pierce v. Commonwealth Edison Company*, 112 F.3d 893, 895 (7th Cir.1997). Lacking this essential element, Davidson cannot maintain a claim under section 301 and leaves this court without subject matter jurisdiction over his action. *See Id.*

### ORDER

Because no material facts are in dispute and the Defendant is entitled to judgment as a matter of law, the court ORDERS that the "Defendant's Motion for Summary Judgment" (filed October 15, 1997) IS GRANTED.

IT IS FURTHER ORDERED that this action is dismissed for lack of subject matter jurisdiction.

IT IS FURTHER ORDERED that the Clerk of Court shall enter a final judgment

as a separate document. *See* Federal Rule of Civil Procedure 58. This judgment shall provide that:

This action came on for hearing before the court, the Honorable Thomas J. Curran, District Judge, presiding, and the issues having been duly heard and a decision having been duly rendered,

IT IS ORDERED AND ADJUDGED

that Plaintiff Johnny R. Davidson take nothing and that this action is dismissed and that the Defendant Wisconsin Natural Gas Company recover of the Plaintiff its costs of this action.

---

**(d) Service of process**
The service of summons, subpena, or other legal process of any court of the United States upon an officer or agent of a labor organization, in his capacity as such, shall constitute service upon the labor organization.
**(e) Determination of question of agency**

For the purposes of this section, in determining whether any person is acting as an "agent" of another person so as to make such other person responsible for his acts, the question of whether the specific acts performed were actually authorized or subsequently ratified shall not be controlling.