In the

# United States Court of Appeals
## For the Seventh Circuit

No. 17-2071

HYATT FRANCHISING, L.L.C.,

*Plaintiff-Appellee,*

*v.*

SHEN ZHEN NEW WORLD I, LLC, and SHEN ZHEN NEW WORLD
INVESTMENT (USA) INC.,

*Defendants-Appellants.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 16 C 8306 — **Virginia M. Kendall**, *Judge.*

ARGUED NOVEMBER 7, 2017 — DECIDED NOVEMBER 28, 2017

Before EASTERBROOK, ROVNER, and HAMILTON, *Circuit
Judges.*

EASTERBROOK, *Circuit Judge.* In September 2012 Hyatt and
Shen Zhen New World I entered into an agreement provid-
ing that Shen Zhen would renovate a hotel in Los Angeles
and operate it using Hyatt's business methods and trade-
marks. Two years later Hyatt declared that Shen Zhen had
not kept its promises. An arbitrator concluded that Shen

Zhen owes Hyatt about $7.7 million in damages plus about $1.3 million in attorneys' fees and costs. Hyatt filed this suit under the diversity jurisdiction and asked a district court to enforce the award. The court did just that. 2017 U.S. Dist. LEXIS 59455 (N.D. Ill. Apr. 19, 2017). Shen Zhen appeals.

Shen Zhen's principal arguments concern the arbitrator's rulings with respect to Lynn Cadwalader, who represented it during the negotiations that led to the contract with Hyatt. Shen Zhen asked the arbitrator to issue a subpoena that would have required Cadwalader to give a deposition; the arbitrator said no. The arbitrator stated that Cadwalader lacked any information bearing on the parties' contractual dispute, which arose two years after she had stopped working for Shen Zhen. The arbitrator also declined to disqualify Hyatt's law firm, DLA Piper, which Cadwalader joined in July 2015, about three years after the contract was signed. Cadwalader had not represented Shen Zhen since October 2012. The arbitrator concluded that DLA Piper's ethics screen ensured that no confidential information would reach the lawyers representing Hyatt in 2015 and 2016.

Shen Zhen maintains that it is entitled to relief under 9 U.S.C. §10(a)(3), which provides that a judge may set aside an arbitrator's award "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced". Like the district court, we do not see how either branch of Shen Zhen's argument comes within this language.

The statutory phrase "refusing to hear evidence" concerns the conduct of the hearing, not the conduct of discov-

ery. Indeed, nothing in the Federal Arbitration Act requires an arbitrator to allow *any* discovery. Avoiding the expense of discovery under the Federal Rules of Civil Procedure and their state-law equivalents is among the principal reasons why people agree to arbitrate. That Hyatt's attorneys' fees in the arbitration exceeded $1 million shows that plenty of discovery occurred; an argument that the arbitrator had to allow more rings hollow.

Whether Cadwalader furnished good advice when negotiating the contract might be relevant in a malpractice action against her but does not bear on Hyatt's contention that Shen Zhen broke its promises. The contract has an integration clause that forecloses resort to the negotiating history as an interpretive tool. Shen Zhen tells us that Cadwalader might have helped bolster its contention that the contract is unconscionable, but in a commercial transaction between sophisticated parties the defense of unconscionability, if available at all, is an objective one that depends on the agreement's terms, not on what either side's lawyer may say about the negotiations. See, e.g., *Pinnacle Museum Tower Association v. Pinnacle Market Development (US), LLC*, 55 Cal. 4th 223, 246–47 (2012).

As for the motion to disqualify DLA Piper: a decision by an arbitrator on that subject may or may not be mistaken, either as a matter of fact (is DLA Piper's ethics screen as good as the arbitrator thought?) or as a matter of law (state rules could require disqualification no matter how good the ethics screen), but §10(a)(3) does not provide for substantive review of an arbitrator's decisions. It provides for judicial intervention when an arbitrator commits "misbehavior", but an error differs in kind from misbehavior. Perhaps Shen

Zhen believes that Cadwalader or other lawyers at DLA Piper have engaged in misbehavior, and if so it can complain to the state bar, but the arbitrator is free of any plausible charge of misbehavior—and only misbehavior by the arbitrator comes within the residual clause of §10(a)(3).

For a fallback argument, Shen Zhen contends that the award disregards federal and state franchise law and therefore should be set aside under 9 U.S.C. §10(a)(4), which covers situations in which "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." Yet §10(a)(4) does not make legal errors a ground on which a judge may refuse to enforce an award. See, e.g., *George Watts & Son, Inc. v. Tiffany & Co.*, 248 F.3d 577 (7th Cir. 2001); *Affymax, Inc. v. Ortho-McNeil-Janssen Pharmaceuticals, Inc.*, 660 F.3d 281 (7th Cir. 2011). Just as an arbitrator is entitled to interpret the parties' contract without judicial review, so an arbitrator is entitled to interpret the law applied to that contract. An agreement to arbitrate is an agreement to move resolution of the parties' disputes out of the judicial system. An arbitrator is not like a magistrate judge, whose recommendations are subject to plenary judicial review.

*Watts* and *Affymax* hold that an arbitrator acts as the parties' joint agent and may do anything the parties themselves may do. *Watts*, 248 F.3d at 580; *Affymax*, 660 F.3d at 284. If they may reach a compromise over some legal issue without being accused of "violating the law," then the arbitrator may do so on their behalf. That was the situation in *Watts*, another franchise case in which the arbitral loser accused the arbitrator of misapplying state franchise law.

One party in *Watts* contended that state law entitled it to an award of attorneys' fees, although the arbitrator had ordered each side to bear its own fees. We replied that, because the parties could have settled their dispute and agreed to cover their own fees and costs, an arbitrator likewise had that power. Arbitrators "exceed[] their powers" under §10(a)(4) if they order the parties to violate the rights of persons who have not agreed to arbitrate—if, for example, an arbitrator purports to allow businesses to fix prices, to the detriment of consumers. But when an arbitrator does only what the parties themselves could have done by mutual consent, §10(a)(4) does not intervene.

None of Shen Zhen's arguments concerns the rights of third parties. Consider, for example, its contention that Hyatt violated one of the FTC's franchise-disclosure rules, 16 C.F.R. §436.9(g), by not furnishing changes in the draft agreement at least seven days in advance of signing. Shen Zhen concedes that it possessed the final version more than seven days in advance but maintains that Hyatt did not do enough to flag changes for attention. Suppose that Shen Zhen and Hyatt disagreed about that subject and, after negotiations, concluded that Hyatt was entitled to enforce the agreement. (A concession on damages could have produced such an agreement, even if Shen Zhen was unconvinced on the legal point.) No one else could have complained. *Watts* and *Affymax* hold that the arbitrator may do what the parties could have done. That's exactly what this arbitrator did when concluding that Hyatt had satisfied §436.9(g). Other provisions of federal and California law that Shen Zhen invokes need not be discussed separately.

Shen Zhen cannot make headway by relabeling its "violation of law" arguments as "violation of public policy." Law reflects public policy, to be sure, but the sort of "public policy" that judges may use to annul an award is policy designed to protect the public against the parties to the arbitration. To repeat an example from *Watts*, 248 F.3d at 580–81: in a contest between a truck driver and an employer, an arbitrator could not conclude that a driver whose license has been revoked can continue to drive a truck.

The parties cannot use arbitration to get around rules designed for the protection of people who have not agreed to arbitrate. That's the point of decisions such as *W.R. Grace & Co. v. Rubber Workers Union*, 461 U.S. 757, 766 (1983). But when the parties are free under the law to agree on some outcome, the arbitrator's decision as their agent does not violate public policy. That's the holding of *Eastern Associated Coal Corp. v. United Mine Workers*, 531 U.S. 57 (2000), which concluded that an arbitrator was entitled to reinstate a driver who had twice tested positive for marijuana. It was lawful for such a person to continue driving, so it was permissible, the Court held, for an arbitrator to reinstate that worker to a driver's job even though the use of marijuana was unlawful and contrary to public policy.

More than 25 years ago, this court held that commercial parties that have agreed to final resolution by an arbitrator, yet go right on litigating, must pay their adversaries' attorneys' fees. See *Continental Can Co. v. Chicago Truck Drivers Pension Fund*, 921 F.2d 126, 128 (7th Cir. 1990). The American Rule requires each side to bear its legal fees in an initial round, but an entity that insists on multiplying the litigation must make the other side whole for rounds after the first. Cf.

28 U.S.C. §1927. Section 14.4 of the contract between Hyatt and Shen Zhen includes a fee-shifting clause, so it is unnecessary to make a separate fee-shifting order under *Continental Can*, but if the parties cannot agree on how much Shen Zhen owes for pointlessly extending this dispute through the district court and the court of appeals, Hyatt should apply for an appropriate order.

AFFIRMED