COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|  |  |  |
|---|---|---|
| XEROX COMMERICAL SOLUTIONS, LLC, | § | No. 08-18-00154-CV |
| | § | |
| Appellant, | § | Appeal from |
| | § | 448th District Court |
| v. | § | of El Paso County, Texas |
| VICTOR SEGURA, | § | (TC # 2016DCV4236) |
| Appellee. | § | |

## O P I N I O N

Victor Segura filed an employment discrimination lawsuit suit against Xerox Commercial Solutions, LLC.  But on the eve of a hearing on Xerox's motion to compel arbitration, he filed a nonsuit.  The parties then tussled for a time over who would arbitrate their disputes.  When an arbitrator was eventually agreed upon, Xerox prevailed in the arbitration based on the procedural defense that the arbitration was not timely initiated.

Then, the district court allowed Segura to withdraw the nonsuit.  Segura also filed a motion vacate the arbitration decision claiming that the arbitrator (1) failed to disclose a conflict-of-interest, and (2) committed misconduct by failing to hear evidence pertinent and material to the controversy.  Conversely, Xerox asked the trial court to confirm the award.  The trial court sided with Segura.  Xerox now appeals the order to set aside the arbitrator's decision and the order refusing to confirm the arbitrator's decision.

We conclude that none of the grounds raised by Segura below support vacatur of the arbitration award. Accordingly, we reverse the trial court's order and remand with instructions to confirm the arbitrator's final award.

## BACKGROUND

This case arises out of a corporate downsizing. Victor Segura started with Xerox as a trainer in October 2009, but on March 18, 2016, he was laid off due to a reduction in force.[1] He believed, however, that younger trainers with less seniority were not laid off. He also believed that during his employment tenure other younger trainers were given a pay raise, when he was not. Unhappy with this state of affairs, Segura initiated an age discrimination claim.

### The Administrative Claim and Lawsuit

Segura first timely filed an administrative charge of discrimination with the EEOC and Texas Workforce Commission Civil Rights Division. The EEOC issued a Notice of Right to Sue letter on November 3, 2016. On November 14, 2016, Segura timely filed suit against Xerox in the 448th District Court for El Paso County, alleging age discrimination under the Texas Labor Code. Xerox filed its answer on January 6, 2017 and asserted that Segura's claims were subject to binding arbitration. On the same day, Xerox filed a motion to compel arbitration, dismiss the lawsuit, or alternatively to stay the proceedings pending arbitration. The pleading set out Xerox's "Dispute Resolution Procedure" (DRP) which requires that "[a]ll Disputes not [informally] resolved by the Parties shall be finally and conclusively resolved through arbitration under this DRP, instead of through trial before a court (including a jury trial)." The term "Dispute" under the DRP is broadly defined and expressly includes age discrimination claims. The DRP provides: "[u]nless otherwise

---

[1] Segura was actually hired by ACS Commercial Solutions, LLC that later changed its name to Xerox Business Services, LLC, which is apparently a wholly owned subsidiary of Xerox Commercial Solutions, LLC. Various employment documents referred to by the parties use one or the other corporate names, but for clarity, we simply refer to the employer as Xerox.

required by law, proceedings under the DRP shall be the exclusive method by which Disputes are resolved. Arbitration under the DRP shall be final and binding, subject only to review as provided for in the [Federal Arbitration Act]."

Segura contested the motion to compel arbitration. He claimed that he never agreed to the DRP and that Xerox had thus failed to establish the existence of an agreement to arbitrate. Conversely, Xerox claimed that Segura agreed to the arbitration provisions on three separate occasions.[2] The motion to compel arbitration was set for an evidentiary hearing on May 9, 2017. Xerox subpoenaed Segura and disclosed the names of four other witnesses it intended to call at the hearing.

But on May 5, 2017--four days before the hearing--Segura filed a nonsuit without prejudice. The notice of nonsuit recites that Segura had submitted his "legal claims" to arbitration with arbitrator William Hardie of Hardie Mediation. Xerox, however, promptly notified Segura's counsel that it objected to William Hardie arbitrating the case. It claimed that the DRP incorporated its own set of rules that required any arbitration be conducted by either the American Arbitration Association (AAA) or Judicial Arbitration and Mediation Services (JAMS). When Hardie Mediation billed for its anticipated services in late May, Xerox declined to pay the bill and again stated that any arbitration under the DRP must proceed before AAA or JAMS. Segura's counsel then corresponded with Hardie on May 31, 2017 asking him to construe the DRP and decide if AAA or JAMS are the only designated arbitrators. On two other occasions, Xerox's counsel disclaimed any intent to use Hardie Mediation for the arbitration. Finally, on August 14,

---

[2] The dispute follows a recurrent theme familiar to this Court: Xerox claimed Segura electronically signed several documents acknowledging the DRP (and later a training session on the DRP), all proved up through affidavits describing the on-line signature process. Segura, however, disclaimed knowing about the DRP and challenged the integrity of the on-line process from which his electronic signature was gleaned. *See Alorica v. Tovar*, 569 S.W.3d 736, 740 (Tex.App.--El Paso 2018, no pet.)(noting issues that arise when employers rely on electronic notice of the existence of an arbitration agreement).

2017, William Hardie informed the parties that a court of competent jurisdiction needed to resolve whether Segura had waived his right to a jury trial, whether AAA or JAMS must arbitrate the case, or if not, who the court would appoint. Two days later (August 16, 2017), Segura submitted the matter to JAMS for arbitration.

**The Arbitration**

JAMS arbitrator Jerry Grissom heard the case. The DRP allows for an arbitration motion practice governed by the Federal Rules of Civil Procedure. In the arbitration, Xerox filed a FED.R.CIV.P. 12(b)(6) motion to dismiss the claim, arguing that Segura's eventual request for arbitration with JAMS was untimely. To explain the argument, we briefly digress to set out the terms of the DRP regarding when arbitration must be requested.

The DRP came with its own set of rules, labeled appropriately enough, Dispute Resolution Rules. Under the rules, either party could initiate arbitration "at any time" but subject to any defenses, timeliness of the claim, and specifically Dispute Resolution Rule 34 (titled "Limitations"). Rule 34 requires that a party must initiate "arbitration proceedings . . . within the time allowed by applicable law for the filing of a judicial complaint [and the] [f]ailure to do so will bar the claim." But Rule 34 also makes allowance for when a party has first initiated a judicial proceeding rather than proceeding directly to arbitration under the DRP. In that case, the deadline for initiating arbitration is the *later* of: (1) ninety days after the date a party is ordered by the court to arbitration (or disposition of an appeal of that order); (2) ninety days after the date the parties agree to submit the dispute to arbitration under the DRP; or (3) the remaining time allowed by the applicable law for filing a complaint in a court of competent jurisdiction. A party initiates arbitration by notifying either AAA or JAMS of the dispute and tendering a $50 fee, or the employee could serve a written request on a plan administrator who would then contact AAA or

4

JAMS.

In its 12(b)(6) motion to dismiss, Xerox argued that by law Segura had sixty days following the receipt of the EEOC's Notice of Right to Sue to file suit under TEX.LABOR CODE ANN.§ 21.254. ("Within 60 days after the date a notice of the right to file a civil action is received, the complainant may bring a civil action against the respondent."). Segura of course did file suit within that time-period, but Xerox claimed the act of later nonsuiting the litigation effectively wiped the slate clean such that the arbitrator must treat the lawsuit as if it was never filed. Xerox cited several cases supporting that proposition, such as *Bailey v. Gardner* where the court upheld the dismissal of a suit on statute of limitation grounds when the plaintiff nonsuited and then refiled his case out of time. 154 S.W.3d 917, 920 (Tex.App.--Dallas 2005, no pet.)("Thus, Bailey's voluntary nonsuit is treated as though the first lawsuit had never been filed."); *see also Armstrong v. Ablon*, 686 S.W.2d 194, 196 (Tex.App.--Dallas 1984, no pet.)(treating dismissal for discovery abuse the same as a dismissal for want of prosecution "with the result that limitations ran as if the suit had never been filed."); *Irwin v. Basham*, 507 S.W.2d 621, 625 (Tex.Civ.App.--Dallas 1974, writ ref'd n.r.e.)(collecting case for the "general rule" that "a suit voluntarily abandoned does not interrupt the statute of limitations"). Applying this reasoning, Xerox contended that a request for arbitration must have been made sixty days from November 3, 2016 (the date of the right to sue letter) and the eventual request on August 16, 2017 was therefore late.

Alternatively, Xerox argued that even if the deadline was defined under the Rule 34 alternatives triggered by the filing of the suit, the request for arbitration was still late. If Segura was allotted ninety days from the date of the May 5, 2017 nonsuit--assuming that to be the date he "agreed" to arbitrate--he did not initiate arbitration with JAMS until August 16, 2017, which was some 100 days later. The attempt to set up an arbitration with William Hardie (who is neither with

5

JAMS or AAA) was not arbitration "under the DRP" and thus was of no effect.

Segura filed a response to the Rule 12(b)(6) motion and advanced four substantive counter-arguments: (1) the limitations portions of DRP are unenforceable; (2) Xerox was estopped from enforcing the limitations clause because it persistently demanded arbitration; (3) the August 16, 2017 filing for the arbitration with JAMS relates back to date the lawsuit was timely filed; and (4) there was no substantial or material failure to comply with the agreement, and thus no prejudice to Xerox.

On June 5, 2018, the arbitrator issued a thirteen-page order that agreed with Xerox. The crux of the opinion states that Segura "did not directly address or contest [Xerox's] argument and supporting authority that [Segura's] voluntary dismissal of his lawsuit resulted in his claim being barred by limitations." The arbitrator then addressed each of Segura's other arguments. Segura had first argued that an arbitration agreement cannot eliminate a party's substantive rights, such as shortening a limitations period. *See In re Poly-America, L.P.*, 262 S.W.3d 337, 352 (Tex. 2008) (provisions of arbitration agreement that negated retaliatory-discharge claim were void and would be severed from agreement); *Long v. BDP International, Inc.*, 919 F.Supp.2d 832, 845 (S.D. Tex. 2013)(contractually imposed one-year limitation period for FLSA violations, which statutorily have either a two or three year limitations period, was unconscionable). The arbitrator reasoned, however, that Xerox was not shortening any limitations period. Segura had 60 days to file suit following the right to sue letter, which would similarly operate as a 60-day deadline to initiate arbitration. Because Segura nonsuited his lawsuit, however, it was as if the suit had never been filed, and the deadline to initiate arbitration was not met.

Second, Segura urged a "relations-back" theory supported by analogy to FED.R.CIV.P. 15 (c)(1)(B)("An amendment to a pleading relates back to the date of the original pleading when . . .

the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading . . . .").  The arbitrator rejected that argument, however, because following the nonsuit, there was no live operative original pleading to which the "amendment" could relate back to.

Third, Segura argued that Xerox was estopped to seek the dismissal of the arbitration that it filed a motion to compel and which it persistently sought to enforce.  The arbitrator rejected that argument because Xerox consistently sought arbitration *pursuant to the terms of the DRP*, and it was objecting to a delay caused by Segura first contesting arbitration, and then pursuing arbitration with a non-approved arbitrator.  Arbitrator Grissom concluded that "[t]here is nothing inconsistent about [Xerox] efforts to enforce its contract rights to have the dispute arbitrated in a forum authorized by the parties' arbitration agreement and to assert its affirmative defenses of limitations and timeliness of claims in that forum."  Finally, the arbitrator rejected Segura's substantial compliance/no prejudice argument based on the wording of the DRP.  The arbitrator distinguished the authority that Segura had cited and concluded that a substantial compliance argument was inconsistent with the defined limitations period, particularly when the DRP explicitly states failure to comply with the limitations period "will bar the claim."

**<u>Segura Moves to Set-Aside the Award</u>**

On June 26, 2018 Segura filed a motion with the 448th District Court to vacate the arbitration award, followed by an amended motion a month later.  The amended motion contended that:  (1) the arbitrator committed misconduct by refusing to hear evidence (specifically refusing to decide the case on the merits, which denied Segura a fundamentally fair hearing); and (2) the arbitrator demonstrated evident partiality by failing to disclose prior dealings with Xerox.  This second ground requires some additional explanation.

7

On June 29, 2018--a date after arbitrator Grissom decided Segura's case--Segura's counsel received a disclosure from JAMS in another case for another claimant against Xerox. That disclosure stated that two JAMS arbitrators had "presented a very basic presentation regarding arbitration rules, procedures and best practices" to Xerox personnel. One of the two arbitrators was being offered to hear this other claimant's case against Xerox. The meeting was attended by more than five, but less than twenty persons, but there was a live video feed to other unknown participants. Neither JAMS nor the presenters were compensated. A later affidavit from a Xerox corporate counsel stated that the presentation was part of a March 2, 2016, in-house presentation by JAMS to in-house counsel and paralegals. Mr. Grissom, the arbitrator in this case, was *not* one of the presenters. Segura attached this disclosure to his amended motion to vacate and represented that had he known of this connection between JAMS and Xerox, he would have objected to Grissom as the arbitrator.

On June 27, 2018, Segura also filed "Plaintiff's Motion to Set Aside Nonsuit and Proceed to Trial on the Merits." Segura argued in part that because the trial court had never entered an order on the nonsuit, it still had plenary jurisdiction over the case.[3] Xerox responded with its own motion to confirm the arbitration award.

### The Hearing, the Ruling, and this Appeal

The trial court heard all the motions at essentially a non-evidentiary hearing. Relevant to the evident partiality issue, Segura's counsel stated that he did not know the full extent of any relationship between JAMS and Xerox. He did know that JAMS arbitrators had gone to Xerox to

---

[3] *See In re Bennett*, 960 S.W.2d 35, 38 (Tex. 1997)("However, the signing of an order dismissing a case, not the filing of a notice of nonsuit, is the starting point for determining when a trial court's plenary power expires. Appellate timetables do not run from the date a nonsuit is filed, but rather from the date the trial court signs an order of dismissal."); *Farmer v. Ben E. Keith Co.,* 907 S.W.2d 495, 496 (Tex. 1995)("The appellate timetable does not commence to run other than by a signed, written order, even when the signing of such an order is purely ministerial.").

8

"put on presentations entitled, Best Practices in Arbitration. And that's all we know, really." Following the hearing, the trial court granted Segura's motions and denied Xerox's cross-motion to confirm.[4]  No findings of fact were requested or made.

Xerox then noticed its appeal from the order setting aside the arbitrator's decision and denial of its motion to confirm the order.  *See* TEX.CIV.PRAC.&REM.CODE ANN. § 51.016 (allowing appeal from an interlocutory order under the same circumstances as 9 U.S.C. § 16 would permit an appeal from a federal district court's order or decision); 9 U.S.C. § 16(a)(1)(D)(allowing appeal of order "confirming or denying confirmation of an award or partial award"); *Good Times Stores, Inc. v. Macias*, 355 S.W.3d 240, 243 (Tex.App.--El Paso 2011, pet. denied)(noting jurisdiction of appeal under FAA of trial court vacatur of arbitrator's award).

On appeal Xerox attacks in two issues both grounds that Segura urged below to set aside the arbitrator's award.  We begin with the lens through which we must judge this appeal.

### STANDARD OF REVIEW

Under the Federal Arbitration Act ("FAA"), an award may be vacated in the following circumstances:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

---

[4] We stop to take issue with the form of the orders in this case.  The trial court's orders simply state that they "grant" both of Segura's filed motions.  But an "order" should do just that: it should order that something specific be done rather than merely grant a motion.  Otherwise, the reader is sent back to the motion to see what relief that motion sought.  And most requests for relief, as they do here, contain the boilerplate request for "such other relief to which [the movant] may be justly entitled."  A definitive order granting specific relief obviates any dispute about what relief was actually granted.  Because we think we know what the trial court intended here, we resolve this appeal on the existing record, rather than delay the matter further with a remand to reform the orders.

9

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). These are the exclusive grounds for vacating, modifying, or correcting an arbitration award under the FAA. *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008). Segura urged below ground two (evident partiality) and ground three (misconduct by refusal to hear evidence).

Both our and the trial court's review of the arbitration award should be highly deferential. *See CVN Group, Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002)("[W]e have long held that 'an award of arbitrators upon matters submitted to them is given the same effect as the judgment of a court of last resort. All reasonable presumptions are indulged in favor of the award, and none against it.'"), *quoting City of San Antonio v. McKenzie Constr. Co.*, 150 S.W.2d 989, 996 (Tex. 1941)("The courts will not overthrow an award such as this, except in a very clear case.").

We review *de novo* a trial court's order confirming or vacating an arbitration award under the FAA. *Macias*, 355 S.W.3d at 243 (order vacating arbitration award); *Garza v. Phelps Dodge Refining Corp.*, 262 S.W.3d 514, 517 (Tex.App.--El Paso 2008, no pet.)(order confirming arbitration award). In doing so, we focus on the integrity of the arbitration process, not on the propriety of the result. *Women's Reg'l Healthcare, P.A. v. FemPartners of North Texas, Inc.*, 175 S.W.3d 365, 367-68 (Tex.App.--Houston [1st Dist.] 2005, no pet.)(alleged errors in application of substantive law by arbitrators is not reviewable on motion to vacate award). Stated otherwise, when reviewing an arbitration award, we may not substitute our judgment merely because we would have reached a different decision. *Bailey and Williams v. Westfall*, 727 S.W.2d 86, 90 (Tex.App.--Dallas 1987, writ ref'd n.r.e.); *see also CVN Group, Inc.,* 95 S.W.3d at 238. We are cognizant that judicial review of an arbitration award adds expense and delay, which undermines the very purpose of arbitration as an efficient system for resolving disputes. *East Texas Salt Water*

10

*Disposal Co. v. Werline*, 307 S.W.3d 267, 271 (Tex. 2010); *CVN Group, Inc.*, 95 S.W.3d at 238. Accordingly, our review of the arbitration award is "extraordinarily narrow." *Myer v. Americo Life, Inc.*, 232 S.W.3d 401, 407-08 (Tex.App.--Dallas 2007, no pet.), *citing Sarofim v. Trust Co.*, 440 F.3d 213, 216 (5th Cir. 2006) and *Hughes Training Inc. v. Cook*, 254 F.3d 588, 593 (5th Cir. 2001); *see also, First Options of Chicago v. Kaplan*, 514 U.S. 938, 942 (1995)(vacatur should only occur in "very unusual circumstances").

## BIAS OF THE ARBITRATOR

One of Segura's grounds for vacatur claimed that the arbitrator demonstrated "evident partiality" by failing to disclose a potential conflict. The conflict stemmed from two other JAMS arbitrators who had put on program for Xerox's in-house legal staff almost a year and half before this arbitration was initiated.

### Controlling Law

A neutral arbitrator selected by the parties demonstrates evident partiality if he or she "does not disclose facts which might, to an objective observer, create a reasonable impression of the arbitrator's partiality." *Burlington Northern Railroad Company v. TUCO, Inc.*, 960 S.W.2d 629, 636 (Tex. 1997).[5] Arbitrators are not required to be disqualified merely because of a past business relationship with a party because often the most capable arbitrators will be those with extensive experience in the industry. *TUCO*, 960 S.W.2d at 636, *citing Commonwealth Coatings Corp. v.*

---

[5] The *TUCO* standard applies to situations where the parties select the arbitrator, and not necessarily where a third party appoints the arbitrator. *TUCO*, 960 S.W.2d at 636. The arbitration clause here has some elements of both. First, JAMS was required to initially screen for conflicts and then designate a list of five potential neutrals from which the parties might agree on one, or failing that, they could strike as many as they wished, then rank the remaining neutrals in order of preference. JAMS would pick the highest rated remaining neutral. If one party struck all five neutrals, JAMS would issue a second list, but the parties were then limited to striking only two from that second list. Once selected, the arbitrator also had an obligation to disclose any circumstance "likely to prevent a prompt hearing or create a presumption of bias." Upon receipt of any such information, JAMS could disqualify the arbitrator, or one of the parties could lodge an objection. JAMS, however, would decide the disqualification question and "its decision shall be conclusive." Because at least at the outset Segura had a unilateral right to strike Grissom, we apply the *TUCO* standard to this case.

11

*Continental Casualty Company*, 393 U.S. 145, 150 (1968)(White, J., concurring). Nonetheless, because the parties are entitled to at least consider the nature of those past relationships, "evident partiality is established from the *nondisclosure itself*, regardless of whether the nondisclosed information necessarily establishes partiality or bias." [Emphasis in original]. *TUCO*, 960 S.W.2d at 656, *citing Commonwealth Coatings*, 393 U.S. at 147 (finding evident partiality based on arbitrator's failure to disclose conflict, even though there was no evidence of actual bias). Disclosure, however, is required only if facts are material; an arbitrator need not disclose "trivial" matters. *TUCO*, 960 S.W.2d at 637. Some undisclosed relationships are too insubstantial to warrant vacating an award. *Id.* at 633. And an arbitrator's impartiality cannot be affected by something of which he is completely unaware. *Forest Oil Corporation v. El Rucio Land and Cattle Company, Inc.*, 518 S.W.3d 422, 431 (Tex. 2017), *citing Mariner Fin. Group, Inc. v. Bossley*, 79 S.W.3d 30, 33 (Tex. 2002)("Clearly, the relationship could not have influenced Nettles's partiality if, in fact, he was unaware of it during the arbitration.").

As demonstrated by the decisions applying these rules, the outcomes are fact intensive and case specific. In *TUCO*, for instance, the case was submitted to panel of three arbitrators--two were "non-neutral" and ostensibly advocated on behalf of the opposing parties. 960 S.W.2d at 629-30. In the middle sat a neutral arbitrator. The neutral arbitrator, however, failed to disclose that three weeks before the arbitration, the law firm of one non-neutral arbitrators referred a substantial piece of litigation to him. The *TUCO* court concluded this non-disclosure established evident partiality as a matter of law. *Id.* at 631.

The Texas Supreme Court confronted a partial disclosure in *Tenaska Energy, Inc. v. Ponderosa Pine Energy, LLC*, 437 S.W.3d 518, 519-20 (Tex. 2014). In that case, the arbitrator disclosed that that the law firm representing one party to the arbitration had recommended him as

an arbitrator in three other arbitrations, and that he was a director of a litigation services company that attended a meeting at the law firm, but there was no indication the firm and company would ever do business. The arbitrator failed to mention, however, that all his contacts at the 700-lawyer firm were with the same two lawyers that represented the party to the arbitration at issue. He also neglected to mention that he owned stock in the litigation services company that was actively pursuing business opportunities with the firm and conducted significant marketing for that company. He had also had meetings or contacts with the two lawyers in question to solicit business from the firm for the company and he allowed one of the two lawyers to edit his disclosures to minimize the contact. The court concluded the undisclosed information "might yield a reasonable impression of the arbitrator's partiality to an objective observer." *Id*. at 519-20.

We faced the partial disclosure issue in *Las Palmas Medical Center v. Moore*, 349 S.W.3d 57 (Tex.App.--El Paso 2010, pet. denied). In that case, decided under the Texas Arbitration Act, the arbitrator disclosed in a letter that she had worked for clients that were both adverse to, and aligned with clients represented by Las Palmas's counsel, and that she was familiar with both the Las Palmas attorneys. *Id*. at 61. Just prior to the arbitration, the Moores' counsel also noticed that one of Las Palmas's attorney was listed as a reference on the arbitrator's resume. *Id.* at 68. Unhappy with the arbitrator's decision, the Moores succeeded in having a trial court vacate the award, and remand it for a new arbitration before a different arbitrator. *Id*. at 63. This Court, however, reversed and reinstated the award. On appeal, the Moores had raised a variety of questions over how the resume reference may have financially benefitted the arbitrator. *Id*. at 70. The Moores also raised a number of questions about the exact nature of the relationship between the clients that the arbitrator and Las Palmas's counsel represented. *Id.* We concluded, however, that these were questions, and not evidence of evident partiality. The Moores carried an initial

13

burden to show some evidence raising a reasonable impression of the arbitrator's partiality, but failed to do so. Moreover, "[n]othing prevented [the Moores] from investigating the nature of the relationship or presenting evidence in the trial court in support of their motion to vacate on this ground." *Id*. at 71.

We also applied the evident partiality rule in *Novoa v. Viramontes*, 553 S.W.3d 45, 53-54 (Tex.App.--El Paso 2018, no pet.). In that case the losing party to an arbitration claimed evident partiality because the arbitrator had not disclosed that the accounting firm that employed a testifying expert for the winning party also did the accounting work for the arbitration service who provided the neutral arbitrator. The record showed, however, that the arbitrator did not know about the relationship between the accounting firm and the arbitration service. We concluded any failure to disclose was not material. *Id*. at 54.

Similarly, in *Forest Oil*, one of the opposing parties to a dispute had first contacted the *staff* of the arbitrator to ask if he would mediate the matter. 518 S.W.3d at 431. He was eventually selected as the arbitrator but he had not disclosed the earlier offer to serve as the mediator. The Supreme Court concluded the trial court below made an implied finding that the arbitrator was unaware the mediation job had been offered to him and affirmed the trial court's ruling which concluded the arbitrator "should not be disqualified for failure to disclose a trivial, non-prejudicial, not consummated invitation to act as mediator." 518 S.W.3d at 431.

## Application

We conclude the record here does not support anything more than the trivial, or non-material sort of non-disclosure that does not create a reasonable impression of partiality. A party seeking to vacate an arbitration award bears the burden of presenting a record that establishes grounds for vacating the award. *Moore*, 349 S.W.3d at 70; *Statewide Remodeling, Inc. v. Williams*,

14

244 S.W.3d 564, 568 (Tex.App.--Dallas 2008, no pet.). In the context of the specific question of whether the undisclosed information demonstrates Mr. Grissom's evident partiality, we must determine whether the information before the trial court supports an implied finding that Mr. Grissom failed to disclose and then review *de novo* whether any failure to disclose demonstrates evident partiality. *Tenaska Energy*, 437 S.W.3d at 523; *Moore*, 349 S.W.3d at 66.

At most, the record here supports that two of the many potential JAMS neutrals made some sort of presentation to Xerox that involved some discussion of best practices. There is no evidence that Mr. Grissom was involved in that presentation, or that he was even aware of it. The absence of his knowledge of the seminar is fatal to the claim. *See Forest Oil*, 518 S.W.3d at 431; *Novoa*, 553 S.W.3d at 53-54. Given this failing, Segura focuses on the potential bias of JAMS as an entity, and not the actual neutral who heard the case. The arbitration agreement, however, required JAMS to investigate the potential bias of the neutrals it offered for the job, not all of the other neutrals it employs in its network. *See Cooper v. WestEnd Capital Mgt., L.L.C.*, 832 F.3d 534, 545 (5th Cir. 2016)(under federal standard, discounting as irrelevant failure of JAMS to disclose relationship between party and another JAMS neutral who was not involved in the case). Nor does the DRP have any explicit provision for JAMS or AAA to disclose their entity conflicts. The fact that the DRP designates AAA or JAMS as the only two arbitration services available would itself disclose that Xerox had some relationship with these arbitration services.

While Segura suggested below that additional investigation might show a stronger case for bias, that investigation was never undertaken when the trial court ruled on the motion. *See Moore*, 349 S.W.3d at 70-71 (merely raising questions of what additional discovery might show is no substitute for evidence creating reasonable impression of evident impartiality). Nor are we aware of any authority that would allow us to remand the case for additional discovery as Segura

15

alternatively asks for in his brief. To the extent the trial court overturned the arbitration decision based on evident partiality, the record simply does not support that ground.

## VALIDITY OF THE DECISION

In its second issue, Xerox contends the trial court would have erred in vacating the arbitration award based on the arbitrator's claimed misconduct or misbehavior.

### Controlling Law

We start with the statutory text outlining the misconduct/misbehavior ground for vacatur:

> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced;

9 U.S.C. § 10(a)(3). Parsing this provision, it is clear that the first clause--refusal to postpone the hearing--does not apply here. The second clause--the refusal to hear evidence--addresses that exact concern. It typically arises when the arbitrator does something that limits a party's ability to present evidence on the issue being decided. *See e.g. Rainier DSC 1, L.L.C. v. Rainier Capital Management, L.P.*, 828 F.3d 362, 365-66 (5th Cir. 2016)(claim of misconduct in allowing excerpted deposition testimony without allowing cross-examination at the hearing); *Howard University v. Metropolitan Campus Police Officer's Union*, 512 F.3d 716, 722 (D.C. Cir. 2008)(claim of misconduct for arbitrator mistakenly excluding testimony); *Al-Haddad Commodities Corp. v. Toepfer Intern. Asia Pte., Ltd.*, 485 F.Supp.2d 677, 687 (E.D. Va. 2007) (claim of misconduct for including undisclosed testimony and limitations on cross-examination of witness); *Valentine v. Interactive Brokers LLC*, No. 01-15-00943-CV, 2017 WL 3597735, at *10 (Tex.App.--Houston [1st Dist.] Aug. 22, 2017, pet. filed)(mem. op.)(affirming vacatur when arbitrators refused to consider post hearing submission of evidence to correct a claimed misrepresentation of fact by opposing counsel).

The last clause of Section 10(a)(3) provides a catchall for misbehavior which has been applied to other process related issues. *See e.g. Hyatt Franchising, L.L.C. v. Shen Zhen New World I, LLC*, 876 F.3d 900, 902 (7th Cir. 2017)(claim of misbehavior in refusing to disqualify opposing counsel); *Totem Marine Tug & Barge, Inc. v. North American Towing, Inc.*, 607 F.2d 649, 653 (5th Cir. 1979)(*ex parte* receipt of evidence constituted misbehavior by the arbitrators); *On Time Staffing, LLC v. National Union Fire Ins. Co. of Pittsburgh, PA*, 784 F.Supp.2d 450, 455 (S.D.N.Y. 2011)(claim of misbehavior in requiring party to post pre-hearing bond without first conducting a full evidentiary hearing); *GJR Management Holdings, L.P. v. Jack Raus, Ltd.*, 126 S.W.3d 257, 263 (Tex.App.--San Antonio 2003, pet.denied)(under Texas statute, claim of misconduct based on arbitrator "surfing the internet" and "e-mailing instead of paying attention to the proceedings").

But none of these grounds allow for the re-litigation of the merits of the arbitration. *Hyatt*, 876 F.3d at 902 (distinguishing between arbitrator misbehavior which is reviewable and substantive review of an arbitrator's decision, which is not); *Laws v. Morgan Stanley Dean Witter*, 452 F.3d 398, 399 (5th Cir. 2006)("To constitute misconduct requiring vacation of an award, an error in the arbitrator's determination must be one that is not simply an error of law, but which so affects the rights of a party that it may be said that he was deprived of a fair hearing.").

### Application

As we view Segura's claim below, and now his arguments on appeal, he is attempting to use the misconduct/misbehavior ground to re-litigate the merits of the motion to dismiss argued in the arbitration. The first tenant of his argument below, and now on appeal, is that the arbitration agreement could not apply a statute of limitations more restrictive than that provided by law. He made the very same argument to the arbitrator. And true enough, the DRP required the that the arbitrator not "abridge or enlarge substantive right available under applicable law." The arbitrator,

17

however, rejected Segura's argument because the DRP only requires that the request for arbitration be made within the same time limit for filing suit--it does not shorten the existing statute of limitations. And the limitation period only came into play because Segura nonsuited his timely filed lawsuit (as opposed to abating it) and then only first agreed to arbitrate with an arbitration service he unilaterally chose which was not authorized by the DRP. Moreover, we note that the DRP commits to the arbitrator questions of interpretation of the DRP, including whether all or part of the DRP is void or voidable.[6] Segura asked the arbitrator to void part of the agreement, and having not succeeded, effectively asked the trial court to do the same. Under whatever subsection of 9 U.S.C. § 10 that request is made, it is improper.

In *Good Times Stores, Inc. v. Macias*, we decided a remarkably similar situation. There, an employee filed a personal injury lawsuit. 355 S.W.3d at 242. The suit was dismissed on the employer's motion, and the employee then initiated an arbitration as required by the underlying employment agreement. *Id*. The arbitration, however, was initiated outside the two-year statute of limitation for tort claims, which the arbitration agreement adopted as the contractual limitation period. *Id*. at 242-43. There, as here, the arbitrator granted a motion to dismiss the arbitration because it was not timely initiated. *Id*. There, as here, the employee prevailed on a trial court to overturn the arbitration decision. *Id*. at 243. Differing from this case, the employee asserted that 9 U.S.C. § 10 (a)(1)(fraud) and (4)(exceeding powers) grounds supported the vacatur. *Id*. at 244. We disagreed, finding no fraud in the arbitrator's sustaining the limitation argument. Nor was Section 10(a)(4) triggered by a complaint that in essence argued the arbitrator decided the issue

---

[6] Paragraph 15 of the DRP states:

> The Arbitrator, and not any federal, state, or local court or agency shall have the exclusive authority to resolve any Dispute relating to the interpretation, applicability, enforceability, or formation of this DRP or any associated agreement to arbitrate under its terms, including but not limited to any claim that all or part of this DRP or associated arbitration agreement is void or voidable.

incorrectly or made a mistake of law. *Id.* at 245-46. The difference here is that Segura dresses his argument as a misconduct/misbehavior claim, but the result is the same--an arbitrator's decision is not the result of misconduct or misbehavior simply because one thinks it wrongly decided.

Another tenant of Segura's argument on appeal contends that his request with JAMS was timely, because DRP Rule 34 gave him ninety days from the date he agreed with Xerox to arbitrate with JAMS to make the request. Responding to an email request from Xerox's counsel, he agreed to arbitrate with JAMS on August 14, 2017 and submitted the claim two days later. If this is the date he agreed to arbitrate under the DRP, then the arbitration request was timely. While the argument is plausible, it was not urged to the arbitrator, and a court's role is not re-litigation of the merits of the claim. *Cf. Moore*, 349 S.W.3d at 64 ("The statutory grounds for vacatur reflect severe departures from an otherwise proper arbitration process and are of a completely different character than ordinary legal error.").

Finally, Segura urges that the arbitrator committed misconduct in refusing to decide the merits of the dispute. The DRP rules, however, authorize "[m]otion practice in any form permitted by the Federal Rules of Civil Procedure, including but limited to the filing of dispositive motions under Rule 12[.]" The DRP also preserved all defenses, including limitations under the law or Rule 34 of the DRP. The DRP rules make provision for summary determinations based on written motion by either party, after the non-moving party has an opportunity to respond, and allow that hearings may be conducted by telephone or by written submission" or in person. There is nothing inherently improper in an arbitrator deciding a procedural defense, such as limitations. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002)(arbitrator presumptively could decide application of NASD time limit for initiating claim); *Anthony v. Affiliated Computer Servs., Inc.*, 621 F.Appx. 49 (2nd Cir. 2015)(sustaining summary dismissal under Xerox's DRP for failure

19

to initiate arbitration within allowed time-period allowed).[7] There is no claim that Segura was denied the opportunity to oppose the motion to dismiss, or the procedure for presenting a response to that motion was deficient.

The trial court lacked any basis under 9 U.S.C. § 10(a)(3) to vacate the award.

## CONCLUSION

Unless the arbitration award is vacated, modified, or corrected on a ground provided for in the FAA, the trial court must grant a party's motion to confirm an award. *See* 9 U.S.C. § 9. Because neither of the grounds urged below are tenable, we reverse the trial court's order vacating the arbitration award and remand the case with instructions to confirm the arbitrator's decision.

July 30, 2019

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.

---

[7] The two older cases cited by Segura are inapposite. In both, the courts vacated arbitration decisions when the arbitrators failed to hold evidentiary hearings on dispositive motions that potentially required factual submissions. *Prudential Securities, Inc. v. Dalton*, 929 F.Supp. 1411, 1417 (N.D. Okla. 1996)(vacating arbitrators' summary dismissal of claim alleging that securities firm improperly amended broker's U-5 form when factual basis for amendment was contested); *Chem-Met Co. v. Metaland Intern., Inc*., No. Civ.A. 96-02548(TAF), 1998 WL 35272368, at *2 (D.D.C. Mar. 25, 1998)(unpublished)(arbitration panel decided disputed issue of whether performance was excused under force majeure clause when applicable rules entitled party to an evidentiary hearing and reason behind force majeure was contested).