In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 25-1265

UNITE HERE LOCAL 1,

*Plaintiff-Appellee,*

*v.*

MAGNIFICENT MILE HOTEL MANAGEMENT, LLC, doing business as Chicago Hotel Collection,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:24-cv-00707 — **April M. Perry**, *Judge.*

———————————

ARGUED SEPTEMBER 22, 2025 — DECIDED JUNE 5, 2026

———————————

Before EASTERBROOK, ROVNER, and ST. EVE, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* A hotel fired one of its employees after he displayed a knife in the workplace and another employee felt threatened. The fired worker's union filed a grievance, but the hotel refused to arbitrate. District Judge Kendall ordered the hotel to proceed using an arbitrator chosen from a list; that arbitrator then found that displaying the knife justified a suspension without pay but did not supply

just cause for discharge. He ordered the employee reinstated, with back pay less ten days' wages. The hotel refused to comply, and, in response to a motion to confirm, District Judge Perry (to whom the case had been transferred) ordered it to do so. This proceeding was within the court's subject-matter jurisdiction under the holding of *Jules v. Andre Balazs Properties*, 146 S. Ct. 1209 (2026).

According to the collective bargaining agreement, an arbitrator will be chosen randomly from a list of nine persons named in the agreement. One of the union's representatives typed all nine names into the web site [www.random.org](www.random.org); it designated Peter Meyers. The hotel refused to proceed, however, contending that Meyers should be disqualified because he was already arbitrating another dispute between the union and the hotel. When the union asked a federal court to compel arbitration, the hotel asked the judge to pick an arbitrator under 9 U.S.C. §5, observing that, despite the agreement's language, the union and the employer usually chose arbitrators by mutual agreement or by striking names from the list until only one was left.

Section 5 provides:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

Judge Kendall thought the dispute covered by the first clause of the first sentence: if the agreement provides a method for selecting an arbitrator, that method must be used. She did not perceive any "lapse" that would justify the judicial selection of an arbitrator. The fact that union and employer often deviated from the random-selection method does not change that method or make it inadequate. (The agreement itself says that union and employer may mutually choose an arbitrator without going through random selection.) The agreement specifies a method of selection; it does not say that a person chosen for one dispute is disqualified from later disputes; and the hotel does not contend that a selection via random.org is anything other than random. (Well, it does say that the site uses a pseudorandom process, as most computer randomizers do, but humans can't tell the difference.) That is all we need to say with respect to Judge Kendall's role in this proceeding.

Once arbitrator Meyers made his decision, the hotel opposed confirmation on the ground that the public policy of Illinois condemns violence in the workplace. That may well be, but arbitrator Meyers did not see any violence, and a reviewing court cannot upset an arbitrator's factual conclusions. *Major League Baseball Players Association v. Garvey*, 532 U.S. 504, 509 (2001). The events were recorded by closed-circuit video. The arbitrator viewed the events as non-threatening even though the co-worker was frightened (the fired worker seemed to be playing with the knife and looked at his co-worker with a "goofy" expression, the arbitrator found). Judge Perry timed things out: the fired worker took the knife out of his pocket at 0:38 seconds on the recording, smiled at the coworker at 0:41, and returned the knife to his pocket at 0:43. The hotel's management had known for some time that

the worker carried this knife and took it out every so often but had never used it to injure (or confront) another worker.

Still, the hotel observes, management called the police, who confiscated the knife because its blade exceeded the local limit for pocket knives. (It was 3½ inches, and the limit in Chicago is 2½ inches. See Chicago Municipal Code §8-24-020.) Yet the worker was not charged with a crime or even issued a ticket. The statute limiting blade length authorizes fines and imprisonment (Municipal Code §8-24-020(g)) but does not compel prosecution and is silent about the employment of a person who displays a forbidden knife.

There is a deeper problem with the hotel's position: a public policy against violence in the workplace is directed against those who *employ* violence, not against employers trying to choose the best methods of curtailing violence. We asked at argument whether the hotel would have violated any statute, regulation, or judicial doctrine if it had responded to these events exactly as the arbitrator did: suspending the knife-wielder for ten days without pay. The answer was "no". The public policy of Illinois simply does not address how employers address actual or implicit threats of violence at work.

Arbitrators are agents chosen to implement agreements between the parties. Almost anything the parties can do, arbitrators can do as their agents. Arbitrators cannot direct the parties to violate a statute or transgress the rights of non-parties; arbitrators cannot violate the terms of the contracts they construe; but subject to these limitations arbitrators may do what the parties themselves may do. It follows that a hotel with the legal right to keep a worker on the payroll cannot complain when an arbitrator does exactly that. We have said this over and over when employers invoke "public policy" as

grounds for defeating arbitrators' awards. See, e.g., *Widell v. Wolf*, 43 F.3d 1150 (7th Cir. 1994); *Pierce v. Commonwealth Edison Co.*, 112 F.3d 893 (7th Cir. 1997); *George Watts & Son, Inc. v. Tiffany & Co.*, 248 F.3d 577 (7th Cir. 2001); *Affymax, Inc. v. Ortho-McNeil-Janssen Pharmaceuticals, Inc.*, 660 F.3d 281 (7th Cir. 2011); *Hyatt Franchising, L.L.C. v. Shen Zhen New World I, LLC*, 876 F.3d 900, 902–03 (7th Cir. 2017). See also *Eastern Associated Coal Corp. v. United Mine Workers*, 531 U.S. 57 (2000). It is more than a little disappointing that counsel for the hotel ignored all of these decisions.

There's nothing wrong with either the arbitrator's selection or the substance of his decision, so the judgment confirming the award is

AFFIRMED.